Argued February 6, affirmed April 2, 1976

# CONTINENTAL PLANTS CORPORATION,
### *Respondent/Cross-Appellant,*
#### *v.*
# MEASURED MARKETING SERVICE, INC.,
### *Appellant/Cross-Respondent.*

547 P2d 1368

*Glenn H. Prohaska* of Day and Prohaska, P. C., Portland, argued the cause and filed briefs for appellant/cross-respondent.

*Morris J. Galen* of Tonkon, Torp & Galen, Portland, argued the cause and filed a brief for respondent/cross-appellant.

HOLMAN, J.

## HOLMAN, J.

Plaintiff brought an action for damages for breach of contract. Defendant appeals from a judgment for plaintiff after a trial by the court without a jury, and plaintiff cross-appeals.

Plaintiff, whose home base was in Portland, Oregon, was an auctioneer of industrial machinery. It purchased for its own account a plant of metal fabricating machinery situated in Louisiana. The price was $40,000 plus one-half of whatever the machinery would bring at auction over $45,000. It was estimated that its cost of auctioning the machinery would be $5,000. It entered into a contract with defendant to mail brochures advertising the sale to prospective purchasers in the metal fabricating field in nine states in the southeastern United States as such purchasers were listed in Category 3400 of the National Business List. Through defendant's error, 5,750 brochures were mailed to Category 2400, which contained only wood fabricators. Plaintiff claims that few people attended the auction, the sale was a failure, and it was damaged as a result.

The sale was advertised and conducted on a no-limit, no-reserve basis and brought only $11,712.50. However, there were no bids for three of the larger, more valuable pieces of equipment, which were presses, each weighing in the neighborhood of 200,000 to 300,000 pounds. The sale was conducted on January 17 and possession of the premises upon which the machinery was situated had to be delivered on February 2. There was evidence to sustain a finding by the trier of the facts that because there were only three pieces of equipment left after the auction, there was an insufficient number of items with which to conduct successfully another auction. Plaintiff thereafter attempted to sell the three pieces of equipment by telephone. It made approximately 100 calls and finally, on the last day possible, sold two of the presses for $12,000. The third piece of equipment was scrapped by

the owners of the premises and represented a total loss to plaintiff. Thus, a total of $23,712.50 was realized from all of the equipment.

Plaintiff claims the market value of the property upon resale was $87,800. The trial judge found the property would have brought $87,800 at auction but that plaintiff had failed to mitigate properly its damages upon the resale of the presses because it had failed to store and sell them when the opportunity was presented. Therefore, he deducted $30,000 from the difference between $87,800 and $23,712.50, which resulted in a judgment for plaintiff of $34,087.50 plus certain minor adjustments which are not in substantial dispute.

■  Defendant first contends plaintiff failed to sustain its burden of proof that defendant's failure to mail the brochures to the correct parties was a cause in fact of the sale's lack of success because plaintiff failed to produce evidence of any potential buyer who would have purchased equipment had he been given notice of the sale. If a plaintiff is held to the kind of proof of cause in fact of the failure of a sale which defendant claims is necessary, it would be virtually impossible for one in plaintiff's position ever to prove a case; however, the law does not require such exactitude of proof. Defendant argues that cause in fact of damages was not proved with reasonable certainty as required by *Parker v. Harris Pine Mills, Inc.*, 206 Or 187, 206, 291 P2d 709, 56 ALR2d 382 (1955). What is actually meant by "reasonable certainty" is discussed in McCormick, Damages 100, § 27 (1935), in which it is stated,

> "* * * [I]t appears that the epithet '*certainty*' is overstrong, and that the standard is a qualified one, of 'reasonable certainty' merely, or, in other words, of 'probability.' "

Plaintiff introduced evidence that the number of persons who registered for its sales were in a fairly constant proportion to the number of brochures which

were mailed, and that the number of persons who purchased at its auctions were in constant proportion to the number who registered for the sale. It then showed that the proportion of registrants to the number of brochures mailed for the sale in question was enormously reduced as compared with 13 prior and subsequent sales it conducted over a period of 18 months. Plaintiff also introduced evidence that the average return from the 13 other sales was 157.5 per cent of the machinery's cost, while the return from the sale in question was only 29 per cent of plaintiff's cost, and that the present sale was the only one in which it had suffered a loss. The very purpose of the contract was to notify persons of the auction who dealt in the kind of merchandise plaintiff had for sale and to generate in them interest in becoming purchasers. We cannot escape the conclusion that there was sufficient evidence for the finder of facts to conclude that the failure to mail the brochures to the proper businesses was the probable cause of the failure of plaintiff's auction and resulted in damage to plaintiff.

■ Defendant next contends it had no knowledge that plaintiff was selling the machinery for its own account, and, therefore, defendant could foresee only a loss of commissions as possible damages and not loss resulting from the sale of an ownership interest. The applicable rule in determining whether pecuniary harm caused in fact by the breach is compensable is set forth in the English case of *Hadley v. Baxendale,* 9 Exch 341 (1854) in the following words:

> "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally; i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach."

[ 625 ]

The rule is basically one of foreseeability and is stated in 5 Corbin on Contracts 79, § 1010 (1964) as follows:

> "* * * All that is necessary, in order to charge the defendant with a particular loss, is that it is one that ordinarily follows the breach of such a contract in the usual course of events, or that reasonable men in the position of the parties would have foreseen as a probable result of breach. It is not necessary that the parties should have given the matter a moment's thought or should have expressed themselves on the subject * * *."

■ The testimony of plaintiff and defendant's employee who regularly dealt with plaintiff was somewhat equivocal, but defendant's employee did testify as follows:

> "Q. Now, basically you knew at the time of the first order that he said *he bought* a metal fabricating plant and that he wanted 3400, is that not correct?
>
> "A. Yes." (Emphasis added.)

This testimony was sufficient to allow the trial judge to find that defendant was aware that plaintiff was selling for its own account and, therefore, the loss of an ownership interest rather than a commission was foreseeable.

■ Defendant also argues that it is not responsible for any of the loss suffered on the three large presses for which there were no bids at auction because defendant could not foresee that, if there were no bids, the equipment would have to be disposed of in approximately ten days because the building in which it was situated had been sold. Defendant could anticipate that some of the items might not be sold if the notices of sale were misdirected. It was aware that plaintiff's business was based in Portland, Oregon, and, therefore, there was little likelihood that plaintiff would have readily available any business organization, premises or facilities in Louisiana. After reasoning so far, it does not take much imagination to anticipate that plaintiff might be subject to considerable financial distress and disadvantage resulting in an unusual loss in attempting at such a distant location to dispose of the enorm-

ously large presses which were pictured in the brochure which defendant was mailing for plaintiff. While it is a close question, we believe, under such circumstances, that an unusual loss from an attempted resale of the presses could be found to be foreseeable as that term is used under the rule of *Hadley v. Baxendale, supra.* As Corbin says, "Nor is it possible to say just how much actual knowledge is required before it constitutes reason to know more." 5 Corbin on Contracts 89, § 1012 (1964). The question whether or not defendant would, in fact, foresee, or would have had reason to foresee, the injury that plaintiff has suffered is a question of fact. 5 Corbin on Contracts 89, § 1012 (1964).

Defendant also contends that plaintiff failed to prove the *amount* of its damages with reasonable certainty. Plaintiff and another machinery dealer, both of whom qualified as experts, testified to the reasonable market value of the items purchased by plaintiff. From this sum was deducted the amount for which the machinery was actually sold. While the evidence of the market value at auction of the machinery is an expert's estimate, it is of sufficient competence and certainty to furnish a basis for a finding of a specific amount of damages. If such was not the case, most, if not all, damages arising out of the breach of contracts to purchase would go uncompensated. It is not a sufficient reason for disallowing damages claimed that they cannot be exactly calculated. It is sufficient if, from proximate estimates of witnesses, a satisfactory conclusion can be reached. *Buck v. Mueller,* 221 Or 271, 283, 351 P2d 61 (1960). In 5 Corbin on Contracts 125-26, § 1020 (1964), it is stated:

> "* * * The process of valuation or appraisal always involves an expression of 'opinion' and 'judgment.' The fact that these are variable, among 'experts' as well as among men in general, is not sufficient ground for rejecting their testimony or for nonacceptance of their results. If the end to be attained is properly kept in view (e.g. compensation instead of punishment), the courts

permit a considerable degree of variation in the method of attaining it. * * *.

"There are many cases in which, by reason of the ordinary experience and belief of mankind, the trial court is convinced that substantial pecuniary harm has been inflicted, even though its amount in dollars is incapable of proof. If the defendant had reason to foresee this kind of harm and the difficulty of proving its amount, the injured party will not be denied a remedy in damages because of the lack of certainty. * * *." (Footnotes omitted.)

■ The next issue is whether plaintiff is entitled to the full difference (less any sum for failure to mitigate damages) between the amount which the machinery brought ($23,712.50) and its market value on resale by auction, which was found by the court from the expert testimony to be $87,800. The contract provision between plaintiff and the former owner was as follows:

"Continental Plants Corp. hereby agrees to purchase * * * machinery and equipment as per attached schedule 'A' for a purchase price of $40,000. This equipment is located at Poloron Products plant in Ruston, Louisiana.

"Title to this equipment shall be conveyed free and clear of all liens and encumberances. [sic].

"It is further understood that Continental Plants Corp. will hold an auction sale at your Ruston facility on January 17, 1973. If the gross proceeds of the attached list generate more than $45,000 net of sales tax, Continental Plants Corp. will additionally pay you 50% of any amount over $45,000."

Defendant argues that pursuant to this agreement one-half of the amount which the property would have brought over $45,000 would have to have been paid to the former owner and that it represents no loss to plaintiff. Plaintiff argues that, under its contract with the former owner, plaintiff must pay one-half of everything it receives over $45,000 and, therefore, it cannot be fully reimbursed for its losses until it recovers the full difference between the amount the property would have brought had the brochures been properly mailed

and the amount which was actually received. The trial judge computed the damages as if plaintiff will have to pay the original owner one-half of everything it receives over $45,000. We agree with the trial judge. While there were no proceeds received in excess of $45,000 from the auction, we believe any sums received by plaintiff from this case would be in lieu of those sums which would have been received through auction and, therefore, such sums must be treated by plaintiff the same as auction proceeds in fulfilling its contract with the former owner. One-half of the receipts over $45,000 is nothing more than part of plaintiff's purchase price for which it must be reimbursed before it is fully compensated.

■ Defendant also contends the trial court erred in allowing plaintiff to amend its complaint by which amendment it raised the amount of its alleged damages to conform to its proof. During the taking of testimony plaintiff moved to amend. The motion was denied with leave to renew. The testimony was complete on October 2, after which briefs were to be filed with the court. Plaintiff renewed its motion during the time the briefs were being filed, and the motion was allowed. The information upon which the motion was based was in the hands of defendant's attorney prior to trial. Such an amendment is within the discretion of the trial judge, ORS 16.390, and his decision is reversible error only for an abuse of discretion. *Cutsforth v. Kinzua Corp.,* 267 Or 423, 431-32, 517 P2d 640 (1973). There was no abuse of discretion in this case.

■ Defendant also argues the amendment was offered after the case was submitted to the court and that this is not permissible under the statute, citing *Cordrey v. Steamship "Bee,"* 102 Or 636, 201 P 202, 20 ALR 1079 (1921). It is our opinion that the filing of the motion before the briefing for the court was complete, was a filing prior to the time the case was submitted to the trial court as contemplated by the statute.

■ Plaintiff cross-appealed, claiming there is insuffi-

cient evidence to justify the trial court's conclusion that plaintiff could have mitigated its damages in the sum of $30,000 by adopting other means of selling the large presses subsequent to their failure to sell at auction. Plaintiff testified that the cost of dismantling, transporting and storing the two presses (which brought only $12,000) would have been $8,000 to $10,000 and that their value was actually $54,000. There is also testimony by plaintiff that after it sold the presses, there was interest in their purchase by a machinery firm in Texas. It is our conclusion that the evidence, although somewhat skimpy, is sufficient to permit the factfinder to come to such a conclusion as the trial court came to in this case; i.e., plaintiff should have stored the presses and awaited a more propitious opportunity for sale.

The judgment of the trial court is affirmed.