Argued and submitted March 2, affirmed on appeal and on cross-appeal
December 9, 1987

SERBICK,
*Respondent - Cross-Appellant,*

*v.*

TIMPTE-PACIFIC, INC., et al,
*Appellants - Cross-Respondents,*

*v.*

SERBICK,
*Respondent.*

(A8301-00625; CA A39120)

746 P2d 1167

Claudia Michelle Larkins, Portland, argued the cause for appellants - cross-respondents. With her on the briefs were E. Sean Donahue, and Ragen, Roberts, Tremaine, Krieger, O'Scannlain & Neill, Portland.

Fred B. Miller, Portland, argued the cause and filed the briefs for respondent - cross-appellant and respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Plaintiff brought this shareholder derivative action, seeking an accounting, a constructive trust and restitution.[1] The trial court found that defendant Mount had transferred Timpte-Pacific's assets, in violation of ORS 57.595,[2] determined that, at the date of its closing, Timpte-Pacific had a net value of $40,000 and entered judgment for plaintiff for $9,600, representing his 24 percent share of the corporation. We affirm.

In 1974, plaintiff and Mount formed Timpte-Pacific, Inc., a truck-trailer sales and service dealership. Plaintiff owned a 24 percent interest; Mount owned 76 percent. Mount also owned and operated Mount Trailer Co. It was plaintiff's understanding that all Timpte truck trailer sales would be made through Timpte-Pacific rather than Mount Trailer. Mount did not share this understanding, but in 1979, when plaintiff discovered that a substantial number of Timpte truck trailers were being sold through Mount Trailer, the parties agreed that all Timpte sales would thereafter be through Timpte-Pacific. Despite that agreement, Mount continued to allocate sales to Mount Trailer. In 1980 and 1981, $352,371 in new Timpte truck-trailer sales were made by Timpte-Pacific, and $513,053 by Mount Trailer Co.

In 1976, plaintiff and Mount decided to build a beach cabin to create a deduction against the income from Timpte-Pacific. A cabin kit was purchased for approximately $23,000 by Timpte-Pacific. Plaintiff, with Mount's approval, began to divert $150 a month from Timpte-Pacific for mortgage payments on the cabin. He also diverted funds for other cabin expenses. The cabin was eventually sold for $120,000, and the profits were divided between plaintiff and Mount. Timpte-Pacific had been experiencing periodic cash flow problems. In October, 1981, Mount advised plaintiff that the lease renewal terms for Timpte-Pacific were prohibitive.[3] He ordered

---

[1] Timpte-Pacific filed a third-party complaint against Robert Serbick, plaintiff's father, who was the manager of Timpte-Pacific. There is no issue on appeal concerning Robert Serbick.

[2] ORS 57.595 provides for the orderly liquidation of a corporation.

[3] Timpte-Pacific's landlord testified that the lease could have been renewed with no rent increase.

Timpte-Pacific closed and sent a letter to its customers urging them to continue their business with Mount Trailer.

■ In their first two assignments of error, defendants contend that there was no evidence from which the trial court could conclude that the value of Timpte-Pacific was $40,000. Plaintiff's expert witness valued the corporation at between $70,000 and $80,000 just before it closed.[4] Defendants argue that that estimate is unreliable, because it was based on the corporation's tax returns, which were prepared from inaccurate corporate books. Defendants argue that the only uncontradicted evidence showed that Timpte-Pacific had no value, because its liabilities exceeded its assets.

The evidence shows that there were inaccuracies in Timpte-Pacific's records. However, plaintiff's expert was at least partially aware of the inaccuracies in the records, which he characterized as a "mish-mash." Further, his value estimate was not based solely on the records. His conclusions were also based on conversations with Timpte-Pacific staff, its sales volume, the industry standards, customer lists and goodwill. It is not necessary that the evidence support a precise figure for valuation in order for damages to be awarded. *See Cont. Plants v. Measured Mkt.,* 274 Or 621, 547 P2d 1368 (1976). On *de novo* review we find that the corporation had a value of $40,000 at the time of its closure.[5]

Defendants next contend that plaintiff's diversion of funds for the beach cabin "bled dry" the corporation, which caused the closure, and that his unclean hands prevent him from obtaining equitable relief. In order for the "unclean hands" doctrine to be invoked, some relationship between the claimed wrongdoing and the harm sued about must be shown. Further, the improper conduct must sufficiently affect the subject matter of the action to justify a court in refusing to grant equitable relief. *North Pacific Lumber Co. v. Oliver,* 286 Or 639, 596 P2d 931 (1979).

---

[4] The expert also testified that, had all Timpte truck-trailer sales gone through Timpte-Pacific, rather than through Mount Trailer Co., the value of the business would have been two to three times higher.

[5] Because this is an appeal from a judgment in an action in equity, our review is *de novo.* The award of money damages does not alter our scope of review. ORS 19.125; *see Booras v. Uyeda,* 295 Or 181, 187 n 3, 666 P2d 791 (1983).

■　　　Here, there was some relationship between the diversion of funds for the beach cabin and the eventual failure of Timpte-Pacific. However, the wrongdoing did not sufficiently affect the relations between plaintiff and Mount to justify denying relief. As the trial court found, although it is difficult to determine how much was diverted by each party, both plaintiff and Mount participated in the diversion of funds. Nonetheless, the evidence showed that, despite the diversion of funds, the corporation still had some value at its closing. Plaintiff, equally with Mount, was entitled to share that value. We agree with the trial court that relief on plaintiff's claim was not barred.

■ ■　　　On cross-appeal plaintiff assigns as error the trial court's denial of attorney fees. He argues that the facts fit within the general rule that attorney fees are awarded in a derivative shareholder claim for obtaining gain or benefit for the corporation, *Krause v. Mason,* 272 Or 351, 358, 537 P2d 105 (1975), and that he should receive an attorney fees award from the $40,000 fund.

An exception to the general rule exists when there is no benefit, or only nominal benefit, to the corporation. See *Krause v. Morgan, supra,* 272 Or at 359 n 2. As stated by the Washington Supreme Court in applying the exception:

> "It has long been recognized that it is within the court's discretion in stockholder derivative actions to award [attorney fees] to successful plaintiffs. But to warrant such an allowance, the action must be prosecuted, not only nominally, but actually in the corporation's behalf. * * * In this case, appellant alone reaped the benefits of this action, and there was no abuse of discretion in the trial court's refusal to allow him to recover attorneys' fees and other expenses (other than taxable costs)." *Leppaluoto v. Eggleston,* 57 Wash 2d 393, 407, 357 P2d 725 (1960).

Here plaintiff alone reaped the benefits. At the time the claim was brought, Timpte-Pacific had been closed and essentially liquidated. There was, in fact, no corporate entity to benefit. The fight was between the shareholders for their individual benefit. The trial court did not abuse its discretion.

Affirmed on appeal and on cross-appeal.