Argued and submitted July 29, affirmed October 14, 1992

## C. J. DESLER,
*Respondent,*

*v.*

## TWELFTH STREET DEVELOPMENT CORP.;
Firland Heights PUD,
a partnership consisting of
Charles F. Larson, Jr. and
Matott Investment Company;
and Charles F. Larson, Jr.,
*Appellants.*

(16-90-09056; CA A70607)

839 P2d 266

Jeffrey E. Potter, Eugene, argued the cause for appellants. With him on the briefs were David V. Brewer and Lombard, Gardner, Honsowetz & Brewer, Eugene.

Timothy J. Harold, Springfield, argued the cause for respondent. With him on the brief was Harms, Harold & Leahy, Springfield.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendants appeal a judgment in favor of plaintiff granting specific performance of a land sale contract. On *de novo* review, we affirm.

Defendants are owners of subdivided real property in Eugene. Defendant Larson owns two undeveloped lots in Phase I of the subdivision. Phase III,[1] the subject of the land sale contract in issue, lies contiguously to Phase I and was owned by defendants. They had planned to build condominiums on it. When those plans became economically unfeasible, they made attempts to sell the property and later offered to sell it to the Phase I Homeowners' Association. The association declined the offer.

Plaintiff's husband, in his capacity as president of the association, subsequently contacted Larson to inquire about the development plans for Phase III. Defendants again offered to sell Phase III to the association, but the offer was again rejected. Larson told plaintiff's husband that if "he" was concerned about the development of Phase III, he should buy the property and offered to sell it to him. Plaintiff's husband said that perhaps he or a group of the homeowners would be interested. After some homeowners expressed a potential interest, the parties began negotiations. Plaintiff's husband told Larson that he wanted the terms to be favorable to him and his wife in the event that the homeowners as a group did not purchase the property. Larson did not voice an objection to that.

Plaintiff's husband drafted the initial proposed agreement. All subsequent drafts were drafted or approved by Larson's son, an attorney. The initial draft listed plaintiff and "select homeowners" as the purchasers. The subsequent drafts deleted the reference to the homeowners and listed plaintiff as the sole purchaser.[2] A final agreement was signed in January, 1990. Later, plaintiff tendered the full purchase price in escrow. However, defendants prevented the escrow

[1] Although Phase III consists of two parcels, we are only concerned with the parcel that defendants allegedly wanted to remain undeveloped.

[2] Defendants explain that the deletion was made at plaintiff's husband's request so that he could present a definite and complete contract to the group to convince them to purchase the property.

from closing, and plaintiff filed a claim for specific performance, which resulted in the judgment from which defendants appeal.

■ Defendants assert five assignments of error, but not all of them require discussion. At the heart of their argument is the premise that they conveyed the land to plaintiff for the purpose of reconveyance to a to-be-formed homeowners' association so that the land would be used as a recreation area for occupants of the subdivision. They argue that specific performance should not be granted, because plaintiff now has plans to divide Phase III into homesites. They point to a purported inconsistency between Articles 7 and 8 H in the contract and argue that, because of the inconsistency, the agreement is too indefinite to enforce.

■ An agreement is too indefinite to be enforced if, because of uncertainty, the reasonable intention of the parties cannot be ascertained. *Howard v. Thomas*, 270 Or 6, 10, 526 P2d 552 (1974). In *Genest v. John Glenn Corporation*, 298 Or 723, 744, 696 P2d 1058 (1985), the court said that its statement in *Booras v. Uyeda*, 295 Or 181, 193, 666 P2d 791 (1983), should govern whether specific performance is warranted. It said:

> "A court of equity cannot, under the guise of 'filling gaps' make the contract which it thinks the parties would have agreed to. The court can only enforce an existing agreement which is so definite in its terms that the court can frame a decree to compel performance." (Cite omitted.)

In the light of those standards, we turn to the contract. Defendants argue that Articles 7 and 8 H are inconsistent, because Article 7 contemplates the use of the property for recreational purposes and Article 8 H allows plaintiff to use the property for any purpose. In analyzing defendants' argument, we consider the contract as a whole. *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 319, 696 P2d 1096, *rev den* 299 Or 314 (1985).

Article 2 sets out the terms of payment: a $15,000 down payment payable in escrow on the date of closing; the remaining balance of $60,000 payable by a promissory note that is to contain a provision for prepayment without penalty

and annual payments of principal and accrued interest. Article 4 states that the transfer shall be by Warranty Deed, subject only to the conditions in the preliminary title report.[3] Article 7 provides that defendants are to receive certain benefits "if" plaintiff forms a homeowners' group, and it contains a restriction on development until the property is transferred to the group or dedicated for recreational purposes. Article 8 H provides that all terms in the agreement "shall survive * * * until payment in full of the Promissory Note and Trust Deed." In context, Article 7 provides a method of protecting defendants' interest while the contract balance remains unpaid, and Article 8 H establishes the duration for Article 7. There is nothing in the terms of the agreement that is so indefinite as to prevent a court from ascertaining the intention of the parties and fashioning a judgment to compel performance.

■ Defendants next argue that the contract is unenforceable, because the purchase price of $75,000 was "grossly inadequate." Mere inadequacy of consideration or a bad bargain is not sufficient to prevent specific performance. There must also be evidence of unfairness or fraudulent practices. *Wittick v. Miles*, 274 Or 1, 7-8, 545 P2d 121 (1976). In the light of defendants' previous unsuccessful attempts to sell the property for $150,000 and $100,000, it cannot be said that the parties did not knowingly agree and deliberately fix the price at $75,000, unless that price was predicated on a misrepresentation by plaintiff about the intended use of the property.

■ Defendants assert that plaintiff, through the representations of her husband, misrepresented her intended use of the property and therefore is not entitled to specific performance because of "unclean hands." To support a finding of unclean hands, the misrepresentations must "sufficiently affect the subject matter of the action to justify a court in refusing to grant equitable relief." *Serbick v. Timpte-Pacific, Inc.*, 88 Or App 633, 636, 746 P2d 1167 (1987).

The testimony is in conflict. Larson testified that plaintiff's husband represented that the land would be left

---

[3] The preliminary title report contains no restrictions on the use of the property.

undeveloped so that the homeowners in the subdivision could use it for recreational purposes. As an owner of Phase I property, Larson would personally benefit if the land remained undeveloped, and he was therefore willing to sell the property for less than fair market value. Plaintiff's husband testified that the conveyance was unconditional as to the use of the property. We are mindful that the final agreement was drafted by defendants' attorney and is silent about any restriction on the use of the property once the purchase price was paid. Moreover, there is no evidence that defendants' previous offers to sell the property restricted the use of the property for recreational purposes.

When Larson offered to sell to the association, the offer was rejected. Shortly thereafter, plaintiff's husband approached Larson. Although initially he was acting on behalf of the association, he was representing plaintiff by the time that the second draft of the agreement was completed. When he expressed doubts about his ability to form a homeowners' group to purchase the property, Larson did not withdraw the offer. Instead, his attorney reworded the agreement so that plaintiff was listed as the sole purchaser. Also, Larson testified that plaintiff was not required to form a homeowners' group before she purchased the property.[4] In the light of the evidence, we conclude that plaintiff is not guilty of "unclean hands."

Affirmed.

---

[4]

"Q. * * * Based upon Article Seven was it your intent, then, Mr. Larson, that C. J. Desler could forever retain this property in her own name without transferring it to a group of homeowners?

"A. It's possible."