Argued and submitted July 13, affirmed September 6, 1995, petition for review
allowed January 30, 1996 (322 Or 598)

Karl J. TADSEN,
*Respondent,*

*v.*

PRAEGITZER INDUSTRIES, INC.,
a corporation,
*Appellant.*

(93-1208-L-2; CA A85428)

902 P2d 586

Charles R. Markley argued the cause for appellant. With him on the briefs was Greene & Markley, P.C.

Joseph M. Charter argued the cause for respondent. With him on the brief was Werdell, Charter & Hanson.

Elizabeth McKanna and Bennett & Hartman filed the brief *amicus curiae* for Oregon Trial Lawyers Association.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

Defendant employer appeals from the judgment for plaintiff, its former employee, in this action under ORS 659.121 for a wrongful discharge based on plaintiff's physical impairment resulting from an on-the-job injury. Plaintiff also alleged other related unlawful employment practices. We affirm.

Plaintiff began working for defendant as an electrician in 1989. He was promoted to a supervisory position the following year. In 1991, plaintiff suffered an on-the-job back injury and took a two-week medical leave of absence. In his absence, defendant filled plaintiff's supervisory position, and it assigned him to perform as a nonsupervisory electrician upon his return. However, it did not formally change his job classification at that time.

Plaintiff suffered aggravations of his injury while performing his new assignment, which necessitated further medical leaves between May and October 1991. In late October, defendant formally removed him from his supervisory position, and assigned him to be a "senior electrician," which entailed more physically strenuous work than the supervisory job. According to defendant, plaintiff "felt his back injury prevented him from performing the duties of senior electrician." Plaintiff took sick leave and, in early November, defendant fired him. Plaintiff was in his early 50's at that time.

Plaintiff then brought this action, alleging the discriminatory firing decision and other unlawful employment practices. He sought economic and noneconomic damages of various kinds, including damages for loss of future earnings and benefits. Such damages, generally referred to as "front pay" damages, are designed to compensate a wrongfully discharged employee for the wages and benefits that he would ultimately have received from his employer if the employer had not wrongfully discharged him.

The case was tried to a jury, which found that defendant had wrongfully discharged plaintiff because of his physical impairment and also, earlier, had failed to reinstate him to his own or another suitable position on his return to work. *See* ORS 659.415 and ORS 659.425 (proscribing the conduct

that the jury found). The jury awarded damages in the total amount of $423,450. Although the verdict form called for a general award of damages, the form as returned by the jury contained handwritten interlineations, indicating that the jury had included two components in its overall award: "$70,000 non-economic (stress)" and "$353,450 economic." The latter figure accorded exactly with the amount of earnings and benefits that plaintiff's expert testified that he would have received had he remained defendant's employee until reaching the age of 63.[1] Axiomatically, an award of that amount under that and the other evidence necessarily would have consisted largely of front pay damages.

For reasons we will discuss, our disposition of defendant's last assignment of error depends on whether we may consider only the general award for which the verdict form asked, or may also consider the component figures shown by the interlineations: if we are restricted to the former approach, the assignment may succeed, but if we may follow the latter approach, it fails.[2]

■ ■ Generally, we could not properly take the jury's interlineations into account when, as here, the record does not definitively disclose the source or the circumstances under which they were made. However, in its opening brief, defendant cites the verdict form and recites as fact:

> "The jury awarded plaintiff economic damages in the amount of $353,450 (the exact future estimated by [plaintiff's expert] to be plaintiff's lost past and future wages and benefits to retirement age 63) and non-economic damages in the amount of $70,000, for a total award of $423,450."

Accordingly, the differentiated figures are accepted and presented to us as the facts of the case by defendant,[3] the appealing party and the one that stands to lose by our viewing the facts in that manner. Quite apart from the verdict form itself, we may accept as true any representation of adverse facts that a party to an appeal presents to us. We do so here, in

---

[1] The expert also computed a higher alternative figure, based on the assumption that plaintiff would work for defendant until turning 65. The jury found the lesser of the two amounts.

[2] Defendant's other assignments are not *dispositively* affected.

[3] We note that plaintiff does not suggest otherwise.

the interest of avoiding a reversal that is not warranted under the facts that the parties agree on and inform us to be true.

■    All of defendant's arguments on appeal relate to the claim for front pay damages. In its first assignment of error, defendant asserts that the trial court erred by denying its motion to strike the claim for those damages. Defendant argues initially that plaintiff was an "at will" employee and that, as such, he should not be entitled to damages for front pay as a matter of law. Defendant reasons that plaintiff "had no right to future employment" with defendant. Because defendant could discharge plaintiff at any time on any basis that would not constitute an unlawful reason, defendant maintains that plaintiff "cannot say that 'but for' the wrongful termination he would continue to be employed by [defendant]." Defendant hypothesizes that, had the trial court ordered plaintiff's reinstatement as a remedy in this case, defendant "could have terminated [plaintiff] the day after his reinstatement so long as the discharge" — unlike the one that actually occurred — "did not constitute an unlawful employment practice." Defendant concludes, on the basis of those propositions, that front pay damages can never be "compensatory" in the case of an at-will employee, and therefore cannot be recoverable under ORS 659.121.[4]

We rejected a materially identical argument by the employer in *Wooton v. Viking Distributing Co., Inc.*, 136 Or App 56, 899 P2d 1219 (1995). The thrust of defendant's argument is that, notwithstanding a discriminatory discharge and its actual causal relationship to a loss of future earnings, damages for that loss cannot be recovered because, independently of the unlawful firing, the employee had no "right" to or assurance of any future employment with the employer. The premise that necessarily underlies that argument is that an employer should enjoy a conclusive presumption that, had it not discharged the employee illegally, it would have discharged him lawfully at exactly the same time that it in fact did so unlawfully. We find that premise unconvincing and, accordingly, are not persuaded by the argument.

---

[4] We imply no view about the correctness or incorrectness of any of defendant's propositions that we do not expressly reject.

Defendant also argues, in support of its first assignment:

"When the terms of employment are indefinite, as in an at-will employment situation, neither the existence nor the amount of future wages can be proved with reasonable certainty. It follows, as a matter of law, that an at-will employee cannot recover future wages."

To the extent that that argument presents the same *per se* argument as the first, except that it is cast in terms of "proof," we reject it for the reasons we rejected a similar argument by the employer in *Wooton*. 136 Or App at 65-66. We decline to hold that an at-will employee can never prove the requisite facts for an award of front pay damages. The fact that the employment does not have a set term does not mean that its likely duration is incapable of proof to the degree of certainty that is required to establish damages for lost earnings. *Owens v. Haug*, 61 Or App 513, 517, 658 P2d 523, *rev den* 294 Or 792 (1983); *see also Welch v. U.S. Bancorp*, 286 Or 673, 704-05, 596 P2d 947 (1979) (sufficiency of proof of lost profits).

In its second assignment, defendant asserts that, in this case, "plaintiff failed to present any evidence from which to determine a reasonable period that plaintiff's employment would have continued, but for the wrongful termination." Defendant therefore maintains that the court erred in denying its motion to strike the front pay claim.

The threshold task under this assignment is to define the requirements for proving the likely duration of future employment in circumstances such as these, when there is no fixed term of employment to serve as a reference point. Defendant relies on *Beal v. Gilchrist Timber Co.*, 64 Or App 300, 667 P2d 575, *rev den* 295 Or 840 (1983). In that case, the plaintiff was hired as a temporary employee, for a minimum of two weeks, and was told that her "employment might or might not develop into a permanent job." *Id.* at 302. She was fired after one day's work, as the result of sex discrimination. We said, in discussing the plaintiff's claim for back pay:

"[T]he record does not contain any evidence that all employes, or that any substantial number of employes, were hired initially on a temporary basis; nor is there any evidence that employes hired on a temporary basis, as a matter of

practice, became permanent employes. We find no substantial evidence that plaintiff's temporary position, in particular, would have evolved into a permanent position. Plaintiff *hoped* she might work permanently.[1] The supervisor testified that he had said that plaintiff's employment might or might not become permanent, depending on whether another opening were to appear while she was working. No one, however, testified that a permanent position ever became available in the weeks immediately following plaintiff's employment, and no one in any way suggested that plaintiff probably would have continued on a permanent basis. Plaintiff's employment in a temporary 'entry-level position' or a 'laborer position,' without more, does not necessarily indicate permanency. We hold that, when a term of employment is temporary or for a fixed term, back pay may only extend to the end of the period that the factfinder determines the plaintiff would have been employed but for the discrimination.

---

"[1] Another employe testified that employes generally had a couple of weeks to *learn* their jobs and become oriented. He did not testify that plaintiff's position would typically evolve into a permanent one. Plaintiff testified that her supervisor said her job was temporary; she added, '[B]ut I believe there is also a thirty-day temporary thing for every new employee.' Plaintiff's apparent reference to a *probationary* period must be distinguished from *temporary* employment. Her testimony does not establish that temporary employes always or even usually become permanent." *Id.* at 303 (emphasis in original; citation omitted).

Other Oregon cases, dealing with analogous issues, make clear that lost earnings and analogous damages and facts relevant to them, such as the duration of future employment, do not have to be established with complete certainty; proof of a likelihood or probability suffices. *Wilson v. B.F. Goodrich*, 292 Or 626, 633, 642 P2d 644 (1982); *see also Welch*, 286 Or at 704-05.

We conclude that the same ultimate question — the period that the plaintiff would likely have been employed by the defendant but for the discrimination — is the proper one in connection with front pay claims as well as claims for back pay. It is also the proper ultimate question in claims by at-will

employees, as well as claims by temporary and fixed term employees.

In *Lords v. Northern Automotive Corp.*, 75 Wash App 589, 881 P2d 256 (1994), the Washington court included a helpful discussion of the issue:

> "Front pay should be awarded 'for a reasonably certain period of time that does not exceed the likely duration of the terminated employment.' *Hayes [v. Trulock]*, 51 Wash. App. [795,] 802, 755 P2d 830 (quoting *Smith v. Atlas Offshore Boat Serv., Inc.*, 552 F. Supp. 128, 130 (S.D. Miss. 1982)). Although front pay was not at issue, *Xieng [v. Peoples Nat'l Bank*, 120 Wash 2d 512, 531-32, 844 P2d 389 (1993)] held a back pay award should not be cut off when the employee's position was eliminated, unless the employer shows the employee would not have been retained in some other capacity. *Xieng*, 120 Wash.2d at 531-32, 844 P.2d 389. In arriving at this conclusion, *Xieng* noted its reasoning was consistent with *MacDissi v. Valmont Indus., Inc.*, 856 P.2d 1054, 1060 (8th Cir. 1988) ('courts will presume for the purposes of awarding relief that an illegally discharged employee would have continued working for the employer until he or she reaches normal retirement age, unless the employer provides evidence to the contrary') and with *Sims v. Mme. Paulette Dry Cleaners*, 638 F.Supp. 224, 233 (S.D.N.Y. 1986) (general reduction in work force not a valid defense to front pay). Otherwise, the employee bears the burden of proving lost future wages for a reasonable period of time." 75 Wash App at 605-06.

■ Although we agree generally with that statement in other particulars, Oregon law is inconsistent with the suggestions in it that the likely duration of employment — to retirement age or otherwise — can be established presumptively, or that a burden of disproof shifts to the employer. *See Beal*; *Callan v. Confed. of Oreg. Sch. Adm.*, 79 Or App 73, 717 P2d 1252 (1986) (implicitly or explicitly contrary to respective suggestions). However, that does not mean that the employee in a particular case cannot prove as a fact that the likely duration of employment would have been until retirement age or the earlier end of the employee's working years. *Tyler v. Bethlehem Steel Corp.*, 958 F2d 1176 (2d Cir 1992).

■ In this case, plaintiff's proof was sufficient to enable the jury to make either of those findings. He was 52 at the

time of trial, and, of course, had back problems. There was evidence that the market for supervisory personnel in the geographical area was small, and that plaintiff had no intention or incentive to enter it. His job satisfaction was high. There was also evidence that, before plaintiff's physical difficulties, defendant was quite satisfied with plaintiff and his work. His performance evaluations were excellent and his merit salary increases made him the highest paid person in a comparable position whom defendant employed. The inference was available that both parties wanted the arrangement to continue indefinitely.

There was also statistical evidence, in the form of government "work life expectancy tables" presented by plaintiff's expert that, together with the direct evidence, would enable the jury to infer that plaintiff would have continued working until the age of 63 or 65. (Presumably — but somewhat inconsequentially given what the jury in fact found — the jury could also have determined from the evidence that plaintiff would have worked until some lesser age that it could have considered was more reflective of plaintiff's personal circumstances than the statistical evidence might indicate.) In sum, there was sufficient evidence to support the jury's finding of the likely period that plaintiff would have remained in his position with defendant, but for the latter's wrongful action, and there was sufficient evidence to support the resulting damages that it awarded.

■ Defendant's remaining assignment challenges the court's refusal to give its requested instruction:

"Economic damages are objectively verifiable, monetary losses incurred by the plaintiff. In determining the amount of economic damages, if any, consider:

"(1) The amount of loss of income sustained by the plaintiff since the termination from employment throughout the period determined by you to be a reasonable period that plaintiff's employment would have been continued, but for the termination of the plaintiff, less any compensation actually earned or which reasonably could be earned by the plaintiff during that period. I instruct you that claims for lost income must be proven with reasonable certainty and cannot be based on guess work, conjecture or speculation."

Based on what we have already said, we conclude that the requested instruction is an essentially correct statement of the law.

The instruction on the subject that the court gave instead apprised the jury:

"Now, economic damages are objectively verifiable monetary losses incurred by the plaintiff. To determine the amount of economic damage, if any, you may consider the amount of loss of income sustained by the plaintiff since the termination to date. The amount may not exceed the sum of $403,550."

Defendant offers the following explanation of how it was prejudiced by the combination of the giving of the latter instruction and the refusal to give the requested one:

"The court merely instructed the jury to consider plaintiff's loss of income from the date of termination *to the date of trial* in an amount not to exceed $403,550. This was the amount plaintiff's expert testified that plaintiff could expect to lose *until retirement* because of his physical inability to earn $16.00 an hour. The jury, therefore, inferred from the court's instruction that plaintiff was entitled to receive lost wages until his retirement, even though there was no evidence that plaintiff could reasonably have expected to work [for defendant] until retirement. The jury then awarded plaintiff $353,450, which was the exact amount calculated by [the expert] to be plaintiff's lost wages if he had retired at age 63 rather than at age 65.

"The court's instruction was an improper statement of the law regarding the appropriate measure of economic damages in this case and unfairly prejudiced [defendant]. If the court had given defendant's requested instruction, the jury would have been notified that they [*sic*] had to consider the reasonable period that plaintiff's employment would have been continued rather than simply assuming plaintiff could recover lost wages until retirement." (Emphasis defendant's; citation to record omitted.)

We have already rejected the aspects of defendant's argument that presuppose that there was a failure of proof by plaintiff. Further, contrary to defendant's assertion, there is no basis for concluding that the jury *assumed* that plaintiff could recover wages until retirement; the *evidence supported* the finding that he would work for defendant until he ended

his working years at age 63. Beyond that, it is not at all apparent how the jury *could* have reasoned in the way defendant surmises. Defendant is correct that the jury *in fact* found that, had he not been unlawfully fired, plaintiff would have ended his employment for defendant at the age of 63. Defendant is also correct that the instruction that the court gave placed a $403,550 cap on plaintiff's economic damages, the amount that the expert testified plaintiff would have accrued if he had worked for defendant until he was 65. Defendant is not correct, however, in its understanding that the jury reasonably could have been induced by the reference to the $403,550 figure in the instruction to believe that it must find that plaintiff would have worked for defendant until he "retired" at 65 or any other age. Two readily distinguishable questions are involved: how long plaintiff would in fact have worked, and how much in earnings he could have lost if he had worked to the latest possible time contemplated by the evidence. Moreover, the lesser damages that the jury awarded, and the proof that it accepted and reasoning it necessarily followed in order to award those damages, are compelling evidence that it inferred nothing from the court's reference to the $403,550 cap on the damages recoverable for a period of future employment that it did not find.

Comparing the instruction that was given and the one that was requested and refused, as they bear on what the jury could have found concerning the likely duration of plaintiff's future employment, the former was more favorable to defendant than the latter. *See Winnett v. City of Portland*, 118 Or App 437, 847 P2d 902 (1993) (error in instruction that benefits party challenging it is not reversible error). The instruction that was given allowed the jury to find damages only to the date of trial — a period of roughly one and one half years from the date of his discharge; the requested instruction, to the extent that it correctly states the law, permitted the jury to find damages for a period of likely continued employment of at least the approximate 13 years that it did find.[5]

That does not quite end the inquiry. Defendant maintains that the requested instruction, viewed alone

---

[5] Defendant does not assign as error that the jury's verdict was inconsistent with the instruction that was given, in that it awarded greater damages than that instruction would have permitted.

rather than in comparison with the one that was given, would have apprised the jury that it *could* also have found a lesser period of future employment instead of the period it in fact found. As an abstraction, defendant is correct, but the facts of the case do not compel us to deal with abstractions. We reiterate that we *know* the specifics of what the jury found and how it found them. The jury accepted the retirement at age 63 variation offered by plaintiff's expert. The linchpin of the work duration factor in the expert's equation was the "work life expectancy table" evidence that he presented, together with the opinion that he based on it.

Defendant points to no *direct* evidence from which the jury could have arrived at a conclusion that plaintiff would have ceased working for defendant before the age 63 or age 65 alternatives that the expert derived. We might agree with defendant's apparent premise that, even in the absence of direct evidence, the jury was *free* to infer from the evidence as a whole that plaintiff's future employment would have had a duration shorter than the age 65 or age 63 variations presented by the expert. However, given that the expert's evidence was the source of both the underyling statistical data and the derivative opinion testimony that led to the age 63 work-duration finding that was actually made, the following instruction that was given by the court seems to us to have told the jury everything of consequence that the ungiven requested instruction might have added to assure that the jury knew it could consider a finding of a shorter period of future employment:

> "There's been expert witnesses testifying in this case, and an expert may give an opinion on any matter which they have special knowledge, skill, experience, training, or education. You should consider the qualifications and credibility of an expert witness and the reasons given for the expert's opinion. You're not bound by the opinion. Give it what weight, if any, to which you consider it to be entitled, and you can totally disregard it if you wish."

Given the circumstances of the case, we see no likelihood that the requested instruction, if given, could have led to a more favorable outcome for defendant. It is clear what the jury found, and it is also clear that the jury was informed that it could have rejected the evidentiary predicate for that finding in whole or in part. The refusal to give the instruction had

no probable affect on the outcome of the case. *Waterway Terminals v. P.S. Lord*, 256 Or 361, 474 P2d 309 (1970). If it was error not to give the instruction, the error was harmless.

Affirmed.