Argued and submitted May 6, decision of the Court of Appeals and judgment of the circuit court affirmed December 19, 1996

Karl J. TADSEN,
*Respondent on Review,*

*v.*

PRAEGITZER INDUSTRIES, INC.,
a corporation,
*Petitioner on Review.*

(CC 93-1208-L-2; CA A85428; SC S42765)

928 P2d 980

Charles R. Markley, of Greene & Markley, P.C., Portland, argued the cause and filed the petition for petitioner on review.

Joseph M. Charter, of Werdell, Charter & Hanson, Medford, argued the cause and filed the briefs for respondent on review.

Elizabeth McKanna and Lory Kraut, of Bennett, Hartman, Reynolds & Wiser, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

VAN HOOMISSEN, J.,

---

** Unis, J., retired June 30, 1996, and did not participate in this decision.

## VAN HOOMISSEN, J.

This is an action under ORS 659.121[1] for unlawful employment practices in violation of ORS 659.415[2] and 659.425.[3] Defendant seeks review of a Court of Appeals decision affirming a trial court's judgment for plaintiff, its former employee. *Tadsen v. Praegitzer Industries, Inc.*, 136 Or App 247, 902 P2d 586 (1995).[4] The issue is whether the trial court erred in denying defendant's motion to strike plaintiff's claim for future lost wages and benefits ("front pay").[5] For the reasons that follow, we hold that it did not err.

---

[1] ORS 659.121 provides in part:

"(1) Any person claiming to be aggrieved by an unlawful employment practice prohibited by * * * [ORS] 659.415 [or] 659.425 * * * may file a civil suit in circuit court for injunctive relief and the court may order such other equitable relief as may be appropriate, including but not limited to reinstatement or the hiring of employees with or without back pay. * * *.

"(2) Any person claiming to be aggrieved by alleged violations of [ORS] 659.415 to 659.435 * * * may file a civil action in circuit court to recover compensatory damages or $200, whichever is greater, and punitive damages. In addition, the court may award relief authorized under subsection (1) of this section and such equitable relief as it considers appropriate."

[2] ORS 659.415 provides in part:

"(1) A worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon demand for such reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of such position. * * * If the former position is not available, the worker shall be reinstated in any other existing position which is vacant and suitable."

[3] ORS 659.425 provides in part:

"(1) For the purpose of ORS 659.400 to 659.460, it is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because:

"(a) An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;

"(b) An individual has a record of a physical or mental impairment; or

"(c) An individual is regarded as having a physical or mental impairment."

[4] Plaintiff's complaint also contained a claim for discrimination and discharge in retaliation for filing a workers' compensation claim in violation of ORS 659.410. The jury found for defendant on that claim, and it is not an issue on review.

[5] "Front pay" is a short hand term frequently used in federal courts and administrative agencies to refer to future lost pay and benefits. *See, e.g., Avitia v. Metropolitan Club*, 49 F3d 1219, 1231 (7th Cir 1995) (discussing the term).

*Black's Law Dictionary*, 669 (6th ed 1990), defines "front wages" as:

On review of a trial court's order denying a motion to strike a claim for damages, this court views the evidence, and reasonable inferences from the evidence, in the light most favorable to the nonmoving party and considers whether there was any evidence to support the jury's award of damages. *See Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984) (standard of review of denial of motion for directed verdict); Or Const, Art VII (Amended), § 3 (standard of review when a jury has rendered a verdict).[6]

Defendant hired plaintiff in March 1989 as a maintenance electrician and promoted him to maintenance supervisor in August 1990. Plaintiff's supervisory duties were not physically demanding. In October 1991, plaintiff injured his back while on the job. Plaintiff's injuries were covered by defendant's workers' compensation insurance. In April 1992, plaintiff took a two week medical leave of absence relating to his back injury. During that absence, defendant assigned plaintiff's supervisory duties to another employee. When plaintiff returned to work, he was assigned electrician duties and was treated by his supervisor in a manner that, according to plaintiff, indicated that he had been effectively demoted to a laborer position. If plaintiff had been reinstated to his former supervisory position, he could have performed that job. Plaintiff's new duties were far more physically demanding than his former supervisory duties. While performing those duties, plaintiff aggravated his back injury and, from May through October 1992, he took several medical leaves. On return to work in October 1992, plaintiff was assigned senior electrician duties that he could not physically perform. Plaintiff continued to take medical leaves and, in November 1992, defendant terminated his employment.

Plaintiff then brought this action, alleging unlawful employment practices under ORS 659.415 and 659.425. Plaintiff sought economic damages, primarily in the form of back pay and front pay, as well as noneconomic damages. A

"Type of prospective compensation paid to a victim of job discrimination * * * until the victim achieves the position he would have attained but for the illegal and discriminatory act."

[6] Article VII (Amended), section 3, of the Oregon Constitution, provides in part:

"In actions at law, * * * the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict."

jury found that defendant had failed to reinstate plaintiff to his former position or had failed to offer him another existing or suitable position after his doctor approved his return to work, in violation of ORS 659.415, and also found that defendant had discharged plaintiff because he had a physical impairment which, with reasonable accommodation, did not prevent the performance of his work, in violation of ORS 659.425. The jury awarded plaintiff economic damages in the amount of $353,450 (the exact amount estimated by plaintiff's expert witness to be plaintiff's lost past wages and benefits plus front pay and benefits to retirement at age 63) and noneconomic damages in the amount of $70,000, for a total award of $423,450. Defendant appealed, challenging only the award of front pay.

In the Court of Appeals, defendant contended that the trial court had erred in denying its motion to strike plaintiff's claim for front pay. Defendant's attack on plaintiff's front pay award was two-pronged. First, it argued that, as a matter of law, an at-will employee such as plaintiff never can prove the requisite facts for an award of front pay. Second, it argued that plaintiff had failed to present evidence from which the jury reasonably could identify the period during which defendant's employment would have continued, but for the unlawful termination. The Court of Appeals rejected both arguments, concluding that plaintiff's evidence was sufficient to establish the period during which the plaintiff likely would have been employed by the defendant but for the discrimination. *Tadsen*, 136 Or at 252-55.[7] Accordingly, the Court of Appeals affirmed the judgment for plaintiff. *Id.* at 259. The Court of Appeals relied on its earlier decision in *Wooton v. Viking Distrib. Co.*, 136 Or App 56, 899 P2d 1219 (1995), *rev den* 322 Or 613 (1996). In that case, the court held that, under ORS 659.121(2), "compensatory damages" includes front pay. *Id.* at 65. We allowed defendant's petition for review.

■  We first address the question whether front pay is a form of "compensatory damages" under ORS 659.121(2).

---

[7] Defendant also argued in the Court of Appeals that the trial court erred in failing to give defendant's requested jury instruction on economic damages. The Court of Appeals held that defendant was not prejudiced by the instruction actually given and, therefore, that any error was harmless. *Tadsen*, 136 Or App at 259. Defendant did not seek review of that holding, and we do not consider it.

That question calls for an interpretation of the statute. Thus, we apply the template set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). The first level of analysis under *PGE* requires that we examine the text and context of the statute. *Id.* at 610.

ORS 659.121(2) provides that "[a]ny person claiming to be aggrieved by alleged violations of [ORS 659.415 or 659.425] may file a civil action in circuit court to recover *compensatory damages,* * * *.*" Black's Law Dictionary, 390 (6th ed 1990) states:

> "Compensatory damages are such as will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury. Damages awarded to a person as compensation, indemnity, or restitution for harm sustained by him."

Under that definition, front pay is a form of compensatory damages, because it restores the terminated employee to the economic position that the employee would have enjoyed, were it not for the employer's unlawful conduct. We assume that the 1987 legislature understood the usual meaning of the term "compensatory damages" when it provided for that form of remedy for unlawful employment practices by amending ORS 659.121(2).[8] *See McIntire v. Forbes*, 322 Or 426, 431, 909 P2d 846 (1996) (stating that "[a]nalysis of text also includes reference to well-established legal meanings for terms that the legislature has used"). Our inquiry into the text and context of ORS 659.121(2) demonstrates that the legislature intended "compensatory damages" to allow for a claim for front pay damages.

■ We next consider whether the fact that employment is "at-will" prevents recovery of front pay in all cases. Before the Court of Appeals, defendant argued that, notwithstanding a discriminatory discharge and its actual causal relationship to a loss of future earnings, an at-will employee cannot

_____

[8] When ORS 659.121 originally was enacted in 1977, plaintiffs alleging unlawful employment practices were limited to "injunctive relief" and "such other equitable relief as may be appropriate, including but not limited to reinstatement or the hiring of employes with or without back pay," and they could not recover "compensatory damages." Or Laws 1977, ch 453, § 6. In 1987, the legislature amended ORS 659.121 to include compensatory and punitive damages as available remedies for plaintiffs claiming unlawful employment practices. Or Laws 1987, ch 822, § 1(2).

recover damages for that loss because, independent of the unlawful firing, the employee has no "right" to, or assurance of, any future employment with the employer. The premise that necessarily underlies that argument is that an employer should enjoy a conclusive presumption that, had it not discharged the employee illegally, it would have discharged him or her lawfully at any time after it in fact did so unlawfully.

Like the Court of Appeals, we find defendant's premise unconvincing. We decline to hold that an at-will employee never can prove the requisite facts for an award of front pay. The fact that at-will employment may be terminated for any nondiscriminatory purpose does not necessarily mean that the likely duration of that employment is incapable of proof to the required degree of certainty. At-will employment may be a factor that bears on whether the proof is sufficient in a particular case, but the right to terminate someone's employment does not establish as a matter of law that an employee cannot prove the existence of front pay damages.

Finally, we examine defendant's argument that plaintiff failed to present any evidence that he would have continued working for defendant through the end of his work life expectancy, as he claimed. Defendant relies primarily on *Jenks v. Larimer*, 268 Or 37, 518 P2d 1301 (1974), for the proposition that, before a claim for front pay may be submitted to a jury, the plaintiff must establish by statistical or similar evidence the average length of employment in the particular industry of an at-will employee.

Before addressing defendant's specific argument, we first consider the preliminary question of the legal standard that governs the sufficiency of evidence of front pay in a statutory claim for unlawful employment practices. At present, that is an open question under ORS 659.121.

In several tort and contract cases involving claims for future lost profits, wages, or income, this court has applied a standard of "reasonable certainty." And, as plaintiff notes, this court recently approved a claim for "wrongful life" based on a failed tubal ligation and consequent future damages of expected expenses of raising the child and providing for its college education. *Zehr v. Haugen*, 318 Or 647, 659, 871 P2d 1006 (1994). The court rejected an argument that, as a matter of law, the claimed damages were "too speculative."

*Id.* at 657-58. "Generally * * * when a plaintiff asserts a claim for damages for future harm, the question whether those damages are recoverable is a question of fact for the jury, the answer to which will depend on the evidence adduced at trial." *Ibid.*

As long ago as *Cont. Plants v. Measured Mkt.*, 274 Or 621, 624, 547 P2d 1368 (1976), this court explained that "reasonable certainty" is not a demanding standard:

> "What is actually meant by 'reasonable certainty' is discussed in McCormick, Damages 100, § 27 (1935), in which it is stated,
>
>> " '* * * [I]t appears that the epithet "*certainty*" is overstrong, and that the standard is a qualified one, of "reasonable certainty" merely, or, in other words, of "probability." ' " (Emphasis in original.)

Applying that standard, this court held in *Cont. Plants* that the plaintiff had submitted sufficient evidence for the factfinder to conclude that the defendant's breach damaged the plaintiff. *Id.* at 625.

Our review of this court's relevant cases reveals that a claim for economic damages necessarily rests on some quantum of evidence that would allow the jury to find that certain events probably would have occurred, or that certain conditions probably would have existed, had it not been for a defendant's wrongful conduct. As this court stated in *Conachan v. Williams*, 266 Or 45, 55, 511 P2d 392 (1973), a case dealing with a claim of lost earning capacity (quoting with approval *Baxter v. Baker*, 253 Or 376, 392, 454 P2d 855 (1969) (O'Connell, J., dissenting)):

> " 'It is obvious that plaintiff's loss both before and after trial can be approximated only and that the calculation of the loss must rest upon factors which can be employed only in terms of probabilities * * *.' "

The lack of absolute certainty does not bar submission of a claim for front pay damages. Only reasonable probability is required. Expert testimony may aid the factfinder in placing a present value on future earning losses. In doing so, an expert may testify to economic assumptions that necessarily rest on estimates and predictions of uncertain future events.

Any weakness can be explored by cross-examination or contrary evidence. *Wilson v. B.F. Goodrich*, 292 Or 626, 631, 642 P2d 644 (1982). Whether the claimed damages were proven is a matter for the factfinder, under appropriate instructions.

Because the legislature incorporated the common-law term "compensatory damages" into the statute, the foregoing cases are persuasive in interpreting what is required under ORS 659.121(2). Nothing in the context of ORS 659.121(2) suggests a different result. Moreover, we see no logical reason to require a higher level of proof of damages in a statutory claim than is required in a claim based on contract or negligence.

Accordingly, we hold that a party claiming front pay in a statutory claim under ORS 659.121(2) for unlawful employment practices must prove such damages with reasonable probability. In that context, the threshold requirement of reasonable probability is satisfied if reasonable jurors could find that the plaintiff would have earned a particular amount of income in the future, were it not for the defendant's wrongful conduct.

■ We now return to defendant's principal argument in this case and examine the record to determine whether there was sufficient evidence, viewed in the light most favorable to plaintiff, the nonmoving party, to allow the jury to consider plaintiff's claim for front pay, keeping in mind the reasonable-probability standard by which the evidence of such a claim is tested.

Defendant argues that an at-will employee can satisfy plaintiff's evidentiary burden *only* by presenting statistical or other comparable evidence of the average duration of employment *in his particular industry*. Defendant asserts that no two industries provide the same amount of job security and that the factors that go into the equation of likely duration vary from one industry to another. Therefore, defendant argues, as a matter of law, the burden should be on the employee to present such statistical or similar evidence to allow the finder of fact to determine a probable duration of employment.[9]

---

[9] The cases from other jurisdictions that defendant cites for this proposition do not support its argument. In two appellate decisions, the courts simply affirmed, on

We reject defendant's argument, and we impose no such evidentiary requirement. Either party might have chosen to present statistical or other comparable evidence of the average duration of employment in the relevant industry in an attempt to persuade the jury that plaintiff either would or would not have continued in defendant's employ until retirement or for some other period. *See Wilson*, 292 Or at 631 (the weakness of a plaintiff's evidence may be explored by contrary evidence). However, the fact that such evidence may be probative of the front pay issue does not make it a necessary element of plaintiff's evidentiary showing.

Plaintiff presented evidence that his job satisfaction was high, that defendant was satisfied with plaintiff's work before he experienced his job-related back problems, and that he had received positive performance evaluations and merit salary increases. We agree with the Court of Appeals, *Tadsen*, 136 Or App at 255, that the jury reasonably could infer from that evidence that both parties wanted the arrangement to continue indefinitely. Plaintiff's vocational rehabilitation expert testified that persons in supervisory positions in plaintiff's field normally are hired from within the company, creating a reasonable inference that plaintiff probably would not have left defendant's employ to seek out a similar position elsewhere. The record also contains evidence respecting the other factors that enter into a calculation of front pay, including the amount that plaintiff would have earned in defendant's employ, offset by the amount that

---

an abuse-of-discretion standard, the lower courts' denials of front pay damages. In *McKnight v. General Motors Corp.*, 973 F2d 1366, 1372 (7th Cir 1992), *cert den* 507 US 915 (1993), the court noted that the plaintiff had failed to submit the necessary data to make a front-pay calculation. In *Hayes v. Trulock*, 51 Wash App 795, 803, 755 P2d 830 (1988), *rev den* 111 Wash 2d 1015 (1988), the court stated that the plaintiffs had failed to present *any* evidence that they would have continued to work for the defendant for another two years. Moreover, in *Lords v. Northern Automotive Corp.*, 75 Wash App 589, 607, 881 P2d 256 (1994), the court held that the trial court erred in limiting front pay to an arbitrary period of five years after termination, noting that the likely duration of employment is an issue of fact, not law. In none of those cases did the courts rule, as a matter of law, that the plaintiffs must submit statistical or other comparable evidence of the average duration of employment in his or her particular industry in order to present a triable issue of front pay damages. *Nichols v. Frank*, 771 F Supp 1075, 1080 (D Or 1991), *aff'd* 42 F3d 503 (9th Cir 1994), another case cited by defendant, simply involves the court's factual finding that the plaintiff had failed to prove that, but for the defendant's sexual harassment, she would have continued to work night and evening shifts.

plaintiff is expected to earn in the future, reduced to present value. We conclude that plaintiff's evidence was sufficient to permit an inference that plaintiff's employment with defendant would have continued until the end of plaintiff's work life expectancy, which the jury found to be age 63 based on "work life expectancy" tables.

We hold that the trial court did not err in denying defendant's motion to strike plaintiff's claim for front pay.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.