Argued and submitted September 18, affirmed December 17, 1997

# Bradford CRAIN,
*Appellant,*

*v.*

# Benjamin SIEGEL
# and Jane Siegel,
*Respondents.*

## (9601-00783; CA A94932)

950 P2d 382

Scott J. Westby and Scott A. Miskiel filed the briefs for appellant.

Don S. Willner argued the cause for respondents. With him on the brief was Don S. Willner & Associates.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Plaintiff brought this action seeking injunctive relief and to quiet title regarding his claim of an easement for the shared use of defendants' residential driveway. The trial court dismissed plaintiff's claim and granted judgment to defendants on their counterclaims, quieting title in and restraining plaintiff from interfering with defendants' use and enjoyment of their property. We review *de novo*, ORS 19.125(3), and affirm.

Defendants have lived on their property since 1964. From the time that they bought their house until 1991, they had an oral agreement with their neighbors, the Kramers, regarding the shared use of defendants' driveway. That agreement allowed defendants to use the Kramers' property as a turn-around area and the Kramers to use a portion of defendants' driveway to reach their garage. From 1964 to 1991, neither the Kramers nor defendants had any disputes over the shared driveway.

In early 1991, the Kramers sold a portion of their property to plaintiff. Plaintiff tore down the garage that the Kramers had used and constructed a house on the property. In order to obtain a construction loan for the house, plaintiff deeded the property to Ironwood Construction (Ironwood) so that Ironwood could obtain a loan and begin construction. One of Ironwood's principals is Jeff Welch.

Welch approached defendants when construction began and asked if he could cross their property to work on plaintiff's house. Defendants responded that they would allow such access so long as their access was not blocked and on the condition that, if the driveway was damaged by heavy construction machinery, Ironwood would repair the damage. They explained to Welch that it was important that their access not be blocked because they were both in bad health and ambulances had come to the house on a number of occasions in the past.

In mid-1991, plaintiff, Ironwood and defendants entered into an agreement that addressed "the driveway use

during the construction of [plaintiff's] new house." The agreement provided, in part:

> "The existing, rock driveway has been in existence for some 30 years. It traverses the property line between [defendants'] residence and the new [plaintiff] residence. A portion of the graveled area on [plaintiff's] lot has been regularly used by [defendants] as a back-up area, to allow them to turn around before entering the street.
>
> *"The parties agree to continue the reasonable, shared use of the existing driveway to serve both residences, until this agreement is replaced by a recorded easement.* The contractor, Ironwood Contracting, agrees that it will not block access to [defendants'] residence with trucks or construction equipment, except as may be necessary and only after giving [defendants] a telephone call to notify them of the time and length of the blockage. Ironwood Contracting further agrees that, upon substantial completion of the house, it will relevel and rock the driveway, as necessary, to restore it to the condition existing prior to construction. Ironwood Contracting further agrees that no fill dirt, materials, or construction debris will be stored on the back-up area of the driveway." (Emphasis supplied.)

Over the next few years, Ironwood, its subcontractors and plaintiff continually blocked access to the driveway as well as the turn-around area on plaintiff's property. Defendants contacted Ironwood and protested. Ironwood did not respond to their complaints. They also tried to contact plaintiff to resolve the problems and negotiate the provisions for the proposed easement. However, plaintiff did not return their telephone calls. When defendants would try to talk to plaintiff about the situation, he would turn and walk away. In 1995, defendants installed a completely separate driveway on their property and constructed a fence that had the effect of depriving plaintiff of the use of the driveway.

The fence precipitated this action. Plaintiff alleged that the 1991 agreement granted him an easement for ingress and egress across defendants' property. Defendants counterclaimed, arguing that they were entitled to judgment quieting title in their property. Plaintiff raised two defenses to the counterclaim: (1) that defendants, by their conduct, had waived any alleged breach of the shared use agreement;

and (2) that because plaintiff had relied on the 1991 agreement, defendants were estopped from preventing him from using the driveway.

After trial, the trial court ruled for defendants:

"All three of plaintiff's claims depend upon the theory that plaintiff acquired an enforceable easement by way of the July 25, 1991 letter agreement. * * * Even in the light most favorable to plaintiff, such an alleged easement was conditioned on (a) the express limitation that continued shared use of the disputed driveway area would be 'reasonable' and (b) the implied condition that plaintiff would cooperate reasonably in 'replacing' the letter agreement with a recorded easement * * *. The clear weight of the evidence persuades me that plaintiff met neither condition; thus, in equity, plaintiff cannot prevail on any of his three claims for relief.

"Defendants' counterclaim seeks a decree quieting title to the recorded boundaries of their property free of any claim by plaintiff to the allegedly shared driveway, on the converse theory that there is no enforceable easement. To that claim, plaintiff asserts the affirmative defenses of waiver and estoppel, on which plaintiff has the burden of proof. The evidence persuades me that there has been no waiver. As to the estoppel defense, the equities weigh in defendants' favor as well."

On appeal, plaintiff argues that the 1991 agreement "contained all elements necessary to create an easement" and that, even if the agreement did not grant an easement, the trial court improperly "rescinded the Agreement (apply contract theory) due to [plaintiff's] purported failure to fulfill conditions precedent to [defendants'] obligation to grant an easement." To create an easement by agreement, the parties must have intended that a property interest be conveyed in defendants' property for plaintiff's use of defendants' driveway and that such use would not be a revocable privilege or subject to the will of defendants. *Luckey et ux v. Deatsman*, 217 Or 628, 634, 343 P2d 723 (1959). We look first to the terms of the agreement to ascertain the parties' mutual

intentions. Only if the terms of the agreement are ambiguous, is it appropriate to examine extrinsic evidence of the parties' intentions. *Yogman v. Parrott*, 325 Or 358, 361-63, 937 P2d 1019 (1997).

Here, the agreement of the parties and the intention of the parties as to the agreement is embodied in a letter written by defendants' attorney and subsequently signed by the parties. The agreement recites:

> "You have asked me to write a brief letter agreement that will deal with the driveway use during the construction of [plaintiff's] new house. Your intent is to have the boundaries of a reciprocal driveway easement surveyed, and I would then draft an easement agreement that would be recorded and replace this letter."

It is clear from the language of the letter agreement that it was not intended to convey an immediate estate in defendants' land. Rather, the agreement contemplated that a survey would be conducted to ascertain the boundaries for an easement and that a subsequent agreement describing and granting an easement would be prepared, executed and recorded. The 1991 agreement is more appropriately characterized as the granting of a license[1] to plaintiff to use the driveway during the period of construction of plaintiff's house, subject to an agreement to convey an easement at a later time. We agree with the trial court that the 1991 agreement did not provide plaintiff with an express easement across defendants' driveway.

We understand plaintiff's second argument to mean that the trial court should have granted specific performance of the promise by defendants to convey an easement and should not have quieted title in the driveway in them. The trial court held that plaintiff was not entitled to enforce the agreement to grant an easement because he was in breach of it. The first issue is whether plaintiff materially breached the agreement. "A breach is material if it goes to the very substance of the contract and defeats the object of the parties in

---

[1] A "license" is the authority to carry out an activity or use another's land by the licensee without passing an interest in the land to the licensee. *Sproul et al v. Gilbert et al*, 226 Or 392, 403, 359 P2d 543 (1961).

entering into the contract." *Bisio v. Madenwald*, 33 Or App 325, 331, 576 P2d 801, *rev den* 283 Or 1 (1978).

■    After reviewing the record, we find that plaintiff committed material breaches of the agreement. The parties' agreement contemplated the shared use of the driveway. During the construction of the house, Ironwood blocked defendants' access to the driveway on almost a daily basis.[2] Defendants contacted Ironwood, who either ignored them or was hostile to them. After the construction was complete, plaintiff blocked defendants' access to the driveway approximately six times a month. In sum, plaintiff's actions deprived defendants of the use of their driveway in material ways. It is well established that when a breach or nonperformance of a promise by one party to a bilateral contact is material, it discharges the other party from a duty to perform under the contract. *Wasserburger v. Amer. Sci. Chem.*, 267 Or 77, 82, 514 P2d 1097 (1973). In this case, defendants' obligation to enter into an easement agreement was discharged by plaintiff's material breach of the 1991 agreement.

■    Plaintiff argues that, even if he did breach the agreement, he is still entitled to the benefit of an easement. He contends that defendants waived their right to terminate the agreement because they allowed construction to continue until its completion in March 1992, despite the daily driveway obstructions. Plaintiff also argues that, because he relied on defendants' representation that they would provide him with a permanent easement when he finished construction of his house, defendants are estopped from denying their obligation to convey an easement under the agreement.

■    Waiver is the intentional relinquishment of a known right, manifested in an unequivocal manner. *Waterway Terminals v. P.S. Lord*, 242 Or 1, 26, 406 P2d 556 (1965). We are not persuaded by the evidence that defendants intended to waive their rights under the agreement. Rather, they attempted to enforce the agreement through their contacts with Ironwood and plaintiff. Their complaints manifested

---

[2] During the trial, defendants established that Ironwood was acting as plaintiff's agent.

their intent *not* to waive their rights to require plaintiff to conform to the requirements of the agreement.

■■ Furthermore, plaintiff has failed to prove the elements of estoppel.

> "To establish an equitable estoppel, plaintiffs must show that defendant made a false representation to plaintiffs with knowledge of facts of which plaintiffs were ignorant, that defendant made the representations with the intent that plaintiffs act upon it, and that plaintiffs did act upon it to their detriment." *Schmidt v. Oregon Asphaltic Paving Co.*, 129 Or App 324, 329-30, 879 P2d 204, *rev den* 320 Or 272 (1994).

In this case, defendants intended to provide plaintiff with a permanent easement when defendants entered into the agreement. It was only because of plaintiff's subsequent, unreasonable use that defendants declined to perform under the agreement. There is no persuasive evidence that defendants falsely represented that the agreement provided for an easement or that they would grant an easement in the future. We conclude that plaintiff's estoppel argument is not supported by the evidence.

■■ Finally, plaintiff takes issue with the equity of the trial court's ruling. He urges that, in light of the fact that the prior owner had used the driveway for 25 years, the court could have issued an injunction against unreasonable use, rather than quieting title in defendants and refusing to enforce the agreement. We are not persuaded by plaintiff's argument. Initially, plaintiff and his predecessors never had any property interest or legal right to use the driveway. Although plaintiff's contractual right could have ripened into a property interest, that did not occur as a result of his own conduct. One of the "primary maxims of equity jurisprudence is that 'he who seeks equity must do equity.'" *Gilmore v. Gilmore*, 7 Or 374 (1879).[3] The trial court's decision to refuse to enforce that 1991 agreement merely returns the parties to the status quo before the agreement was made and breached by plaintiff.

Affirmed.

---

[3] The case name is actually *Gilmore v. Burch*. However, in citing case names, we use the name shown in the running head of the case in the official reporter.