Argued and submitted February 28, reversed and remanded as to defendant's
counterclaims for breach of contract and breach of duty of good faith;
otherwise affirmed December 27, 2000

## CITY OF EUGENE,
a municipal corporation,
*Respondent,*

*v.*

## Joseph MONACO,
dba Office Furniture Liquidators,
*Appellant.*

(16-98-03917; CA A105054)

17 P3d 544

Gary M. Georgeff argued the cause and filed the briefs for appellant.

Jens Schmidt argued the cause for respondent. With him on the brief was Harrang Long Gary Rudnick.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

Plaintiff City of Eugene filed this action against defendant Joseph Monaco for breaching a lease. Monaco counterclaimed for breach of the lease and for breach of the duty of good faith.[1] Monaco appeals from a judgment in the city's favor. We affirm in part, reverse in part, and remand.

The city leased a building to Monaco[2] in 1993. Monaco used the building to operate a discount furniture business. In 1994, the parties executed a one-year written lease setting Monaco's rent at $3,120 per month. The written lease expired on June 30, 1995. On July 26, 1995, the city sent Monaco a letter stating that: (1) all of the conditions of the written lease were still in effect but Monaco's tenancy was now a month-to-month tenancy at will; (2) when the written lease expired, Monaco's option to renew the lease also expired; (3) the city was looking for other tenants but would provide Monaco with 30 days' notice if it accepted an offer from another tenant; and (4) the city was increasing Monaco's rent from $3,120 per month to $4,120 per month. According to Monaco, he agreed to the increased rent, in part, in exchange for a promise from the city that there would be no further rent increase unless someone else offered to lease the building.

Approximately a year later, the city sent Monaco another letter stating that as of October 1, 1996, it was raising Monaco's rent from $4,120 to $6,400 a month. The city later made the rent increase effective January 1, 1997. Monaco asked to see a copy of the competing offer to lease the building, which he believed was the condition for raising his rent. When the city refused, Monaco concluded that the city was not acting in good faith and refused to pay the increased rent.[3] At the end of January 1997, the city gave Monaco 30

---

[1] Monaco also asserted a counterclaim for intentional infliction of emotional distress. The trial court granted the city's summary judgment motion on that claim, and Monaco has not assigned that ruling as error.

[2] The lease states that it is between the city and "Joe Monaco, dba Office Furniture Liquidators ('Tenant')[.]" On the signature page under "TENANT," Monaco signed his name. No other name appears on the signature page.

[3] Monaco did pay the city $4,120 rent for January, although his payment was late.

days' notice to vacate the building and terminated Monaco's tenancy on March 1, 1997. Monaco moved the business to another location where it ultimately failed.

In March 1998, the city filed this action against Monaco, alleging breach of contract and an alternative claim in *quantum meruit* to recover $12,027.36 for two months' unpaid rent and various unpaid fees. In his amended answer, Monaco alleged, as an affirmative defense, that the city was estopped from holding him personally liable because it knew that Office Furniture Liquidators, Inc., an Oregon corporation, had leased its building and that Monaco had only been acting as the corporation's agent. He also asserted counterclaims against the city for breach of the lease and for breach of the duty of good faith.

Before trial, the city moved to exclude any evidence that Office Furniture Liquidators was a corporation. The city reasoned that, because the 1994 written lease was between it and "Joe Monaco, dba Office Furniture Liquidators," *see* n 2 above, the parol evidence rule barred Monaco from proving that he was not the lessee. The trial court granted the city's motion but on a different ground. It reasoned that "if the Defendant's theory was that he is not personally liable and then in fact the corporation should be personally liable, * * * [t]hen the corporation should have been joined as a party in interest." Because Monaco had not joined the corporation as a party, the trial court ruled that "there cannot be any evidence with respect to that corporation, nor can it be referred to in argument or in opening statement."

At the close of the evidence, the city moved for a directed verdict on Monaco's counterclaims for breach of contract and breach of the duty of good faith. The trial court granted the motion because Monaco had failed to prove his damages with a reasonable degree of certainty. The court submitted the city's claims against Monaco to the jury, which found that Monaco had breached the lease and that the city's damages were $5,528. The trial court entered judgment accordingly.

Monaco raises seven assignments of error on appeal. Five of his assignments are directed at evidentiary rulings that could have affected the jury's verdict in favor of the city,

and two assignments focus on the trial court's directed verdict rulings. We begin with the evidentiary rulings. Monaco assigns error to the trial court's ruling precluding him from introducing evidence of Office Furniture Liquidators' corporate status. He argues that, without that evidence, he was effectively barred from arguing that he acted as the agent for a disclosed principal and that the corporation was in fact liable for the lease payments.

■       At oral argument, the city acknowledged that the trial court's reason for excluding the evidence was incorrect. We accept the city's concession. If the evidence is otherwise admissible, a general denial is sufficient to permit a defendant to "offer evidence that he was acting as the agent of a corporation not only to disprove any individual liability on his part, but also to show that the contract alleged by [the] plaintiff is not the contract of the parties[.]" *Lokan v. Roberts*, 270 Or 349, 352, 527 P2d 720 (1974). In this case, Monaco not only denied the city's allegations generally, but he also alleged, as an affirmative defense, that the city should have sued the corporation for unpaid lease payments and fees.

■■       The city argues that the trial court's ruling may be affirmed on an alternative ground. It reasons that the parol evidence rule bars Monaco from proving that he signed the lease in any capacity other than as "Joe Monaco, dba Office Furniture Liquidators." *See* ORS 41.740 (codifying parol evidence rule). We agree with the city that the writing is, on its face, unambiguous. It identifies Monaco as the person who is liable on the lease. The use of the phrase "dba Office Furniture Liquidators" implies that Monaco conducts his business under an assumed business name, but that fact does not suggest that Monaco is not personally responsible for the lease payments. *Cf. Mitchell v. The Timbers*, 163 Or App 312, 314, 319, 987 P2d 1236 (1999).[4] We also agree with the city that if

---

[1] In *Mitchell*, Stanley Sanglier did business under an assumed business name, The Timbers. Initially, the plaintiff sued only The Timbers, and the trial court dismissed the complaint for failing to name an entity capable of being sued as the defendant. 163 Or App at 314. The plaintiff moved to amend the complaint to name "Stanley Sanglier dba The Timbers" as the defendant, but the trial court denied the motion because the amended complaint was time barred. *Id.* at 315. On appeal, we accepted the trial court's initial ruling that an action against The Timbers was an action against an entity that was not capable of being sued but held that the amended complaint was timely because it related back to the initial complaint under ORCP 23 C.

the writing is unambiguous, the parol evidence rule applies to the use of extrinsic evidence to discharge the agent of a disclosed principle from contractual liability. *Ritchie v. Mundon*, 268 Or 283, 286-88, 520 P2d 445 (1974); *Barbre v. Goodale*, 28 Or 465, 472, 38 P 67, 43 P 378 (1896); *accord Restatement (Second) of Agency* § 320 comment b (1958) (parol evidence rule may bar an agent sued on a contract from proving that the other party knew that he or she was acting as an agent for a disclosed principal).[5]

Monaco does not dispute that the phrase "Joe Monaco, dba Office Furniture Liquidators" is itself unambiguous.[6] He argues instead that the phrase is ambiguous when viewed in light of certain extrinsic evidence and legal rules. His argument is based in part on evidence that Office Furniture Liquidators, Inc., is a registered Oregon corporation. He also relies on an administrative rule for the proposition that Office Furniture Liquidators could not have been registered as an assumed business name because it is too similar to the registered corporate name. *See* OAR 160-010-0010(2)(a) (omission of the abbreviation "Inc." is insufficient to distinguish an assumed business name from a registered corporate name). It follows, Monaco concludes, that the phrase "Joe Monaco, dba Office Furniture Liquidators" could mean, when read in light of extrinsic evidence and relevant administrative rules, that he was doing business under the assumed business name of Office Furniture Liquidators, Inc.

One of the difficulties with Monaco's argument is that the evidence he relies on to establish an ambiguity is not the sort of extrinsic evidence that may be considered in deciding whether a writing is ambiguous. The court has stated that a trial court "may consider parol and other extrinsic evidence to determine whether the terms of an agreement are ambiguous. ORS 42.220." *Abercrombie v. Hayden Corp.*, 320

---

[5] The court did not have to resolve this issue in *Ritchie* to decide the case, but it did in *Barbre*. *See Barbre*, 28 Or at 472.

[6] In light of the term that Monaco challenges, the parol evidence rule applies even if the lease is only partially integrated. *See Wescold, Inc. v. Logan International, Ltd.*, 120 Or App 512, 520, 852 P2d 960 (1993), *rev den* 318 Or 459 (1994) (explaining application of the rule to partially integrated documents); *Restatement (Second) of Contracts* § 216 (1979).

Or 279, 292, 883 P2d 845 (1994).[7] The statement in *Abercrombie* does not stand for the proposition that any extrinsic evidence may be considered in determining whether a term is ambiguous. Rather, *Abercrombie*'s reliance on ORS 42.220 as support for its statement makes clear that the extrinsic evidence that may be considered is limited to the circumstances under which the agreement was made.[8] *See Hurst v. Lake & Co., Inc.*, 141 Or 306, 314-15, 16 P2d 627 (1933) (recognizing that the type of extrinsic evidence described in ORS 42.220 may be considered to determine whether a term is ambiguous); *Criterion Interests, Inc. v. The Deschutes Club*, 136 Or App 239, 243, 902 P2d 110, *on recons* 137 Or App 312, 903 P2d 421 (1995) (same).

In this case, Monaco did not ask the trial court to consider the circumstances under which the lease was made to show that an ambiguity existed. *See Hurst*, 141 Or at 314-15. Rather, he sought to use contradictory evidence to vary an otherwise unambiguous term in the contract. *Abercrombie* does not go that far. *See Criterion Interests, Inc.*, 136 Or App at 246. The trial court correctly granted the city's motion *in limine*. Monaco has provided no reason for disturbing the jury's verdict that he breached his lease with the city.[9]

■ Monaco also assigns error to the court's ruling granting a directed verdict on his counterclaims for breach of good faith and breach of contract. The city argues that the court's ruling was correct but that, in any event, the jury's verdict on the city's breach-of-lease claim establishes that any error was harmless. We begin with the trial court's ruling that Monaco

---

[7] Although we have noted the Ninth Circuit has questioned whether this portion of *Abercrombie* has been overruled *sub silentio*, we have adhered to *Abercrombie*. *See OTECC v. Co-Gen*, 168 Or App 466, 476 n 8, 7 P3d 594 (2000).

[8] ORS 42.220 provides:

"In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."

[9] Monaco's remaining evidentiary assignments of error are directed at three rulings excluding portions of his testimony as hearsay. Monaco, however, has not provided us with a transcript of the entire proceeding below, and we cannot determine whether excluding that testimony prejudiced him. *See York v. Bailey*, 159 Or App 341, 346-47, 976 P2d 1181, *rev den* 329 Or 287 (1999). We accordingly affirm those rulings.

failed to prove his damages with sufficient certainty to go to the jury. In reviewing that ruling, we consider the evidence in the light most favorable to Monaco. *Vandermay v. Clayton*, 328 Or 646, 648, 984 P2d 272 (1999).

A party who seeks to recover lost profits must prove his or her damages to a "reasonable certainty." *Tadsen v. Praegitzer Industries, Inc.*, 324 Or 465, 471, 928 P2d 980 (1996). "Reasonable certainty" is not a demanding standard. *Id.* at 472. Lack of absolute certainty does not bar submission of a claim for lost profits; reasonable probability is all that is required. *Id.* " 'Generally * * * when a plaintiff asserts a claim for damages for future harm, the question whether those damages are recoverable is a question of fact for the jury, the answer to which will depend on the evidence adduced at trial.' " *Id.* (quoting *Zehr v. Haugen*, 318 Or 647, 659, 871 P2d 1006 (1994) (alteration in original).

Lost profits may be established by proof of past profits of an established business or by expert projections based on tests performed under substantially similar conditions. *Willamette Quarries v. Wodtli*, 308 Or 406, 412, 781 P2d 1196 (1989). At trial, Monaco testified that his net profit was an average of $62,000 a year before he was evicted and that he believed that his profits would have continued if he had not been evicted. Monaco also introduced profit and loss statements for 1994, 1995, and 1996. If the jury believed Monaco's testimony and his profit and loss statements, it could determine, with reasonable certainty, the amount of profits that the business would have earned had the city not allegedly breached the lease and its duty of good faith.

The city argues, however, that the business's profit and loss statements are incomplete because they fail to account for the value of Monaco's services to the business and the cost of casual labor. *See Buck v. Mueller*, 221 Or 271, 284, 351 P2d 61 (1960) (in computing lost profits, the plaintiff should have deducted the value of his and his wife's labor from the business's income). The city correctly notes that the profit and loss statements do not show Monaco's wages. Monaco, however, testified at trial, "I stopped paying myself wages. They weren't deducted from—if I had paid myself

wages, I would have written myself a check, and if I had written myself a check it would have shown up on this [profit and loss statement]." When later asked, "As far as your wages, they're not on there, correct," Monaco answered, "It appears not." The city relies on the latter answer to establish that Monaco paid himself wages that are not reflected as expenses on his profit and loss statements. If, however, Monaco's two statements are read together and if the jury believed Monaco's testimony, it could infer that the reason Monaco's wages do not appear as expenses on the profit and loss statements is that he had stopped paying himself wages and was not taking any salary from the business.

The city also argues that the profit and loss statements do not account for the cost of casual labor. On that point, Monaco testified that the wages shown on the business's statement were for one regular employee. He acknowledged that the business also employed casual labor, the cost of which was not reflected on the profit and loss statements. He estimated, however, that "there may be about two or three thousand dollars over the entire year that didn't make it on [the statement]." Monaco's testimony, if believed, was sufficient to permit the jury to determine the cost of casual labor that was not reflected on his profit and loss statements.

■ Based on Monaco's testimony and proof of past profits, the jury reasonably could infer that Office Furniture Liquidators was an established business and also what his lost profits were.[10] *See Willamette Quarries*, 308 Or at 412. Because Monaco proved the business's lost profits with sufficient certainty to avoid a directed verdict on his counterclaims, we need not decide whether the other losses that he

---

[10] The city also argues that Monaco failed to prove his lost profits with sufficient certainty because he "offered insufficient evidence that the market conditions which had existed in the past, when his business allegedly had made a profit, continued after he went out of business." Although testimony of unverifiable expectations alone is insufficient to prove lost profits, a record of past profits of an established business provides sufficient evidence to go to the jury. *Willamette Quarries*, 308 Or at 412. The jury could conclude that Monaco's evidence established the required record. Moreover, Monaco testified that, based on his competitors' continued profits, his past profits were also likely to continue in the future. Even if Monaco's record of past profits alone were not sufficient, that record *and* Monaco's testimony provided sufficient evidence of lost profits to submit Monaco's counterclaims to the jury.

claims would also be sufficient to avoid a directed verdict motion or whether, as the city argues, they are simply subsumed in Monaco's lost profits claim.

▇    The city argues finally that any error in directing a verdict on defendant's breach-of-lease counterclaim was harmless.[11] Before turning to the city's argument, it is helpful to explain the procedural posture in which this issue arises. When Monaco filed his notice of appeal, he set out the points on which he intended to rely on appeal and did not ask that all the testimony be transcribed. *See* ORS 19.250(1)(e) (permitting an appellant to designate only portions of the trial court record); *State v. Culbertson*, 29 Or App 363, 366-67, 563 P2d 1224 (1977). The city did not ask that additional portions of the testimony be transcribed. *See* ORS 19.250(2) (other parties may designate additional portions of the trial court proceedings as part of the record on appeal). The portions of the transcript that Monaco designated demonstrate that there was sufficient evidence of damages to go to the jury, and the city does not argue that erroneously directing a verdict on Monaco's counterclaim on that ground is not prejudicial. *See Baker v. English*, 324 Or 585, 590, 932 P2d 57 (1997); *York*, 159 Or App at 347-48.

The city argues, however, that the jury's verdict establishes that an otherwise prejudicial error is harmless. The city reasons that the jury's verdict in its favor on its breach-of-lease claim means that the jury "found either that [the city] had substantially performed its obligations under lease or that it had a valid excuse for not doing so. Therefore, the jury could not have found in favor of [Monaco] on his counterclaim for breach of [the lease]." *See Hawkins v. Teeples and Thatcher*, 267 Or 151, 158, 515 P2d 927 (1973); *Crain v. Siegel*, 151 Or App 567, 573, 950 P2d 382 (1997).

The city's argument sweeps too broadly. The fact that the jury returned a verdict in the city's favor for unpaid rent does not necessarily mean that the jury also resolved the question whether the city provided Monaco sufficient notice

---

[11] The city conceded at oral argument that its harmless error argument does not apply to Monaco's counterclaim for breach of good faith. We accept the city's concession. *See Richardson v. Guardian Life Ins. Co.*, 161 Or App 615, 624, 984 P2d 917, *rev den* 329 Or 553 (1999).

before terminating his leasehold interest—one of the allegations in Monaco's breach-of-lease counterclaim. *See McKeon v. Williams*, 104 Or App 106, 109, 799 P2d 198 (1990), *aff'd* 312 Or 322 (1991). We recognize that, on the record before us, Monaco's claim that the city failed to give him sufficient pre-termination notice may appear questionable. The city, however, has not argued that that claim fails on its own merits, and we hesitate to reach an issue that the parties have neither briefed nor argued. Moreover, we lack a record that would permit us to undertake that task.[12] In this posture, we cannot say that the jury's verdict necessarily establishes that any error in directing a verdict on Monaco's breach-of-lease counterclaim was harmless.

Reversed and remanded as to defendant's counterclaims for breach of contract and breach of the duty of good faith; otherwise affirmed.

---

[12] The record permits us to say that erroneously directing a verdict on Monaco's counterclaim because he failed to prove damages prejudiced him, *see York*, 159 Or App at 347-48, and the city has not argued otherwise. The city relies instead on a separate ground—the jury's verdict—to establish that an otherwise prejudicial error is harmless. The absence of a complete record cuts against the city's argument that we may affirm the court's ruling on that separate ground. *Cf. Culbertson*, 29 Or App at 366-67 ("If the respondent determines that the record as designated by the appellant is inadequate for the resolution of the points on appeal set out in the notice of appeal, then *former* ORS 19.029(2) [(1975)] [*renumbered as* ORS 19.250(2) (1997)] gives to respondent the responsibility and authority to designate additional portions of the record as respondent deems necessary.").