Argued and submitted March 2, affirmed on appeal; reversed and remanded on cross-appeal June 6, 2001

## CRUZ DEVELOPMENT, INC.,
*Respondent - Cross-Appellant,*

*v.*

## Svetlana YAMALOVA,
*Appellant - Cross-Respondent.*

## C97-0626CV; A107105

26 P3d 174

Timothy J. Zimmerman argued the cause for appellant - cross-respondent. With him on the briefs were A. Richard Vial and Vial Fotheringham LLP.

David R. Nepom argued the cause and filed the brief for respondent - cross-appellant.

Before Edmonds, Presiding Judge, and Landau and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

Plaintiff sold defendant property. When defendant determined that plaintiff had misrepresented facts in connection with the sale, she stopped making payments on the property. Plaintiff brought an action for judicial foreclosure, and defendant counterclaimed for misrepresentation. The trial court entered judgment in plaintiff's favor on the judicial foreclosure claim and in defendant's favor on her misrepresentation counterclaims. It also awarded plaintiff attorney fees. Defendant appeals and plaintiff cross-appeals. We affirm on appeal and reverse and remand on cross-appeal.

Plaintiff agreed to sell defendant two lots in a subdivision that plaintiff was developing. Defendant intended to build duplexes on each lot for use as residential rental properties. The transaction closed on February 29, 1996, after the parties executed a sale agreement that included certain representations concerning the lots. Defendant proceeded with her plans to construct duplexes on each lot but experienced delays for two reasons. A nearby well needed to be cleaned and capped in order to comply with Oregon law, and some of the soil on one lot was unsuitable for the proposed foundations. As a result, defendant incurred significant unexpected expenses and lost rental income due to the delay in constructing the duplexes.

Defendant determined that two of the representations that plaintiff had made in the sale agreement were false and refused to pay the outstanding balance on the promissory note. Plaintiff then brought an action for judicial foreclosure of the trust deed. In response, defendant filed two counterclaims for misrepresentation. Her first counterclaim alleged that plaintiff had received notice that the well was in violation of Oregon law, contrary to plaintiff's representation in the sale agreement. Her second counterclaim alleged that, although plaintiff had represented that the property was suitable for building, plaintiff knew or should have known that one lot was, in fact, not suitable. On each counterclaim, defendant sought damages for the expenses that she had incurred as a result of plaintiff's alleged misrepresentations

and the lost profits caused by the resulting construction delay.[1]

At trial, defendant introduced evidence that her lost rentals totaled $15,900 and that her cost overruns totaled $13,000. Her proof of lost profits consisted of evidence of lost rental income. She testified:

"For lot 22, I had three-month[s'] delay and I rented three units for $1,150 each and for three months it came to $6,900. Then Lot 23, four months['] delay. One unit I rented for $1,200. Multiplied by four, it came to $4,800. And one unit I rented for less money, for $1,050, also multiplied by four, and it came to $4,200. Total rental loss came to be $1[5],900."

Defendant also introduced rental agreements corroborating those figures. Defendant did not submit any other evidence concerning lost profits.

Defendant prevailed on each counterclaim; the jury awarded her $5,534.50 on the first counterclaim and $11,739.79 on the second. Plaintiff prevailed on its foreclosure claim and was awarded $37,199.90. The trial court netted the awards and entered a judgment for plaintiff in the amount of $19,925.61 plus interest. The court also determined that plaintiff was the prevailing party and awarded it attorney fees and costs totaling $17,649.30 plus interest.

On appeal, defendant raises three assignments of error, all of which are directed at the trial court's award of attorney fees. Plaintiff advances three assignments of error on cross-appeal. Plaintiff's first two assignments are directed at the trial court's failure to grant a directed verdict on defendant's two misrepresentation counterclaims. Plaintiff also assigns error to the trial court's submission of defendant's claim of lost profits to the jury on the ground that defendant

---

[1] Defendant's counterclaims do not separate damages for additional costs from damages for lost rental profits. The first counterclaim sought "damages in the sum of at least $10,000.00, which includes the cost of site excavation, well cleaning and capping, lost rentals, and interest[.]" The second counterclaim sought "damages in the sum of approximately $16,000.00, which includes the cost of excavation and backfill work performed on Lot 23 to make it buildable for a duplex, construction overruns due to the poor soil conditions, and loss of rental income due to delays in construction."

failed to submit any evidence of net profits. We write only to discuss plaintiff's assignment of error regarding net profits. We affirm the other rulings to which plaintiff and defendant assign error without discussion.

■ At trial, plaintiff moved to strike defendant's claim for lost profits because defendant had failed to prove the net profits that she lost with reasonable certainty. *See Pearson v. Schmitt*, 259 Or 439, 442, 487 P2d 84 (1971).[2] Plaintiff does not argue that defendant failed to establish that she suffered any loss of profits as a result of plaintiff's misrepresentations; rather, it argues that defendant failed to present any evidence of the amount of her lost *net* profits.

■■ A person seeking lost profits must present evidence that refers "unambiguously to net profits," *Frogge v. US West Communications, Inc.*, 120 Or App 619, 620, 853 P2d 1323, *on recons* 124 Or App 669, 863 P2d 1313 (1993), *rev den* 319 Or 36 (1994), because "[o]nly net lost profit may be recovered," *GPL Treatment, Ltd. v. Louisiana-Pacific Corp.*, 133 Or App 633, 637, 894 P2d 470 (1995).[3] "In reviewing the trial court's denial of the motion to withdraw the issue of lost profits from the jury, the question is whether there was evidence in the record to permit a finding of *some* net lost profits." *Id.* at 637 (emphasis in original).

---

[2] A party seeking to recover lost profits must establish with "reasonable certainty" the "existence and amount of lost profits." *Pearson*, 259 Or at 442; *accord Tadsen v. Praegitzer Industries, Inc.*, 324 Or 465, 471-72, 928 P2d 980 (1996). "Reasonable certainty is not a demanding standard[;]" as such, "reasonable probability is all that is required." *City of Eugene v. Monaco*, 171 Or App 681, 688, 17 P3d 544 (2000) (internal citation and quotations omitted). Here, plaintiff does not argue that the existence of defendant's lost profits is not reasonably probable. Plaintiff argues instead that defendant failed to submit any evidence of the amount of lost net profits.

[3] In *Frogge*, we noted that "[p]laintiff's brief relates testimony that either refers expressly to lost *gross* profits, or is ambiguous. Plaintiff directs us to no evidence, nor have we found any, that establishes her lost net profits. The directed verdict was proper, because plaintiff presented no evidence from which a reasonable trier of fact could find the amount of her damages." 120 Or App at 620 (emphasis in original). Similarly, in *Pearson*, plaintiff offered evidence of his estimated lost earnings at "about $4,900" without offering evidence of expenses incurred in doing business. 259 Or at 441. The Supreme Court held that "[i]n the present case, the plaintiff offered no evidence as to what it cost him to carry on his business. He merely testified * * * [to] his lost earnings." *Id.* at 442.

■ Here, defendant submitted no evidence of lost net profits. At trial, defendant testified to her lost rental income and offered subsequent rental agreements to prove the amount of that lost income. That evidence appears to identify her lost revenue, not her lost net profits.[4] Under *Frogge,* defendant's evidence was not sufficient to establish lost net profits. Moreover, the rental agreements defendant introduced at trial specifically provide that defendant, as landlord, had certain maintenance and repair obligations under the agreements.[5] Defendant's evidence implies that she expected to incur expenses or at least was obligated to incur expenses associated with the business of renting and operating her properties. Her own evidence undercuts any claim that proof of her lost rental income established her lost net profits. There is no evidence from which a jury could calculate defendant's lost net profits without engaging in pure speculation. *See Pearson,* 259 Or at 442. The trial court erred in refusing to strike defendant's claim for lost profits.

■■ In this case, the jury's awards on both of defendant's counterclaims could have included lost profits. The awards are unsegregated, and it is unclear what portion, if any, of the awards was based on lost rental profits. The Supreme Court has explained that, "[i]f the court cannot determine whether the verdict was based on [a claim] supported by the evidence or on one unsupported by the evidence, the result is a new trial."[6] *Whinston v. Kaiser Foundation Hospital,* 309 Or 350, 359, 788 P2d 428 (1990). Accordingly, we reverse the judgment in defendant's favor on her two counterclaims and remand for a new trial.

Affirmed on appeal; reversed and remanded on cross-appeal.

---

[4] Defendant did not testify that she had no expenses. There is thus no evidence that what appears to be defendant's lost gross profits were, in fact, lost net profits.

[5] The agreements, which contain identical language, provide that "[m]ajor maintenance and repair of the leased premises, not due to Lessee's misuse, waste, or neglect or that of his employee, family, agent, or visitor, shall be the responsibility of Lessor or his assigns."

[6] The application of this principle requires the moving party to take "some action at trial to remove the unsupported allegation from the jury's purview." *Whinston,* 309 Or at 359. Plaintiff did so here. At trial, plaintiff moved to strike the claim for damages of lost profits because, among other reasons, there was a "lack of evidence of any net profit."