Argued and submitted June 6, 2001, affirmed February 27, 2002

Peter VON OHLEN,
*Appellant,*

*v.*

GERMAN SHORTHAIRED POINTER
CLUB OF AMERICA, INC.,
a Missouri corporation,
*Respondent.*

94C-13141; A108607

41 P3d 449

Clayton C. Patrick argued the cause and filed the briefs for appellant.

Gordon Hanna argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

In 1996, the trial court issued a permanent injunction prohibiting the German Shorthaired Pointer Club of America from collaring dogs during field trials. In 1999, the court granted a motion to dissolve the injunction. On appeal, plaintiff challenges the latter ruling. We review *de novo* and affirm.

Plaintiff raises and trains German Shorthaired Pointers.[1] Until recently, plaintiff was a member of the German Shorthaired Pointer Club of America, which conducts field trials for that breed under the auspices of the American Kennel Club (AKC). In 1994, plaintiff filed this action against the German Shorthaired Pointer Club of America, Inc. (GSPCA, Inc.) to enjoin the practice of collaring German Shorthaired Pointers during field trials.

Collaring means "controlling a dog by the collar around [its] neck rather than controlling the dog by voice command." Plaintiff explained why the practice concerned him:

> "[T]raditionally a German shorthaired pointer cannot be touched at a field trial except tapped on the head to release to retrieve. In all other circumstances, the dog has to be mentally tough enough, mentally sound enough to do everything at a field trial by voice command. * * * [Allowing collaring rather than requiring voice commands during

---

[1] German Shorthaired Pointers were first registered in Germany in 1872 and were popularized in America by Dr. Charles Thornton beginning in 1925. Thornton described the breed as follows:

"The coat is longer than our English pointer and very closely knit, resembling the coat of the hair seal * * *. They stand on strong legs and good feet, are short coupled, well muscled, deep barrel-shaped chest, characteristically expressive eyes and intelligent head; long, broad ears, regulation cropped tail; extremely elegant and smart in carriage and movement. On point they are strikingly beautiful * * *. As to speed and range they compare favorably with our English pointers and setters of the shooting-dog class. They seldom range farther than a quarter of a mile from the gunner. I have hunted them side by side with some of my fast Llewellins and they invariably located more birds. * * * They hunt heavy cover with ease and eagerness, naturally adapting their range to suit conditions. As retrievers they are at home on land or in water and they will locate dead or wounded game in the heaviest brush or briar."

Jim McCue, *This Is the German Shorthair*, Gun Dog Magazine (May/June 1989) (quoting Thornton).

field trials] creates a dog that is not nearly as mentally sound a dog as the old traditional shorthair was."

Plaintiff based his request for injunctive relief on the club's rules, which prohibited collaring. In 1996, the court issued an injunction prohibiting the "German Shorthaired Pointer Club of America" from allowing collaring during field trials,[2] and we affirmed the trial court's judgment on appeal.

Three years later, the German Shorthaired Pointer Club of America Foundation (GSPCA Foundation) filed a motion to dissolve the injunction because it had changed its rules in 1999 to permit collaring. Plaintiff responded that the motion should be denied for two reasons. First, he noted that he had filed his action in 1996 against GSPCA, Inc., but that a different entity, the GSPCA Foundation, had moved to dissolve the injunction. Plaintiff argued that the GSPCA Foundation was not the real party in interest. Alternatively, he argued that, even if the GSPCA Foundation were the real party in interest, it had fraudulently procured a 1997 rule change, and perhaps a 1998 rule change, that affected the 1999 rule change that gave rise to the Foundation's motion to dissolve the injunction. The trial court ruled that the GSPCA Foundation was the proper party and that any impropriety in the 1997 rule change did not affect the 1998 or 1999 rule changes.

To understand plaintiff's arguments, it is necessary to set out more completely the somewhat complex facts that have given rise to them. Before 1990, the German Short-haired Pointer Club, Inc., was incorporated in Pennsylvania. In 1990, that corporation asked its attorney how it could achieve nonprofit tax status. The attorney explained that, because the corporation's records were in disarray, it would be difficult for it to be treated as a nonprofit corporation. The attorney advised the corporation that it would be more cost effective to move to a new state and reincorporate instead of trying to reconstruct and organize the corporation's records.

---

[2] Plaintiff's amended complaint alleged that "[a]llowing collaring during trials has caused the market value of Plaintiff's dogs to decrease, causing him substantial financial damage." When the trial court entered a permanent injunction in plaintiff's favor, it implicitly found that GSPCA, Inc.'s failure to enforce its rule caused plaintiff economic damage.

Following its attorney's advice, the corporation reincorporated as GSPCA, Inc., in Missouri in August 1990.

Before reincorporating in Missouri, the Pennsylvania corporation neither notified its members of its plans nor obtained their consent to reincorporate. In January 1991, approximately four months after it reincorporated, the corporation sent ballots to its members,[3] asking whether it should reincorporate in Missouri. The letter accompanying the ballot explained that the corporation was seeking to gain nonprofit tax status. The corporation's members approved reincorporating in Missouri.[4]

In September 1991, GSPCA, Inc., received another letter from its attorney, advising it that it could achieve non-profit status more easily in Missouri if it were a foundation. Following that advice, the GSPCA Foundation incorporated in Missouri in October 1991.[5] The GSPCA Foundation appears to have assumed responsibility for the functions that GSPCA, Inc., previously performed. The GSPCA Foundation also appears to have acted as if GSPCA, Inc.'s members automatically became its members. GSPCA, Inc., however, did not notify its members that the GSPCA Foundation had been formed or ask them whether a new corporation, the GSPCA Foundation, should assume GSPCA, Inc.'s responsibilities. Rather, all of the GSPCA Foundation's correspondence continued to go out under GSPCA, Inc.'s name.

In January 1992, the State of Missouri dissolved GSPCA, Inc., because it failed to file annual corporate reports. In January 1993, the State of Missouri dissolved the GSPCA Foundation because it also failed to file annual corporate reports.

In 1994, plaintiff filed this action against GSPCA, Inc., seeking to enjoin collaring at field trials. At that point,

---

[3] As nonprofit corporations, GSPCA, Inc., and the GSPCA Foundation have members, who elect a board of directors to manage the corporation's affairs.

[4] Plaintiff views the 1991 vote as ratifying the earlier decision to incorporate GSPCA, Inc. The GSPCA Foundation views the 1991 vote as advance authorization for its incorporation, which did not occur until several months after the vote.

[5] GSPCA, Inc., authorized the GSPCA Foundation to use a similar corporate name.

both GSPCA, Inc., and the GSPCA Foundation had been dissolved. Plaintiff served his complaint on the club's president and secretary, who appeared through the club's attorney in Oregon.[6] It does not appear that anyone told the trial court that the GSPCA Foundation had been incorporated with the understanding that it would assume the functions that GSPCA, Inc., had performed. Similarly, it does not appear that anyone told the trial court that both Missouri corporations had been dissolved before plaintiff filed his action.

In his complaint, plaintiff alleged that the practice of collaring violated the club's rules. In 1996, the trial court entered a permanent injunction against the "German Shorthaired Pointer Club of America,"[7] prohibiting

"the Defendant from allowing collaring at any field trials, and Defendant is hereby enjoined and restrained from allowing collaring at any field trials unless and until such collaring has been approved by a vote of the membership of Defendant pursuant to its constitution and bylaws."

At that point, the club was the only entity authorized by the AKC to conduct field trials for German Shorthaired Pointers, and the people who ran the club abided by the court's injunction.

In 1997, the State of Missouri rescinded the order dissolving the GSPCA Foundation's corporate status. The next year, the GSPCA Foundation registered the name "German Shorthaired Pointer Club of America, Inc." as an assumed business name.

Beginning in 1997, the GSPCA Foundation held a series of elections that led to the amendment permitting collaring. In 1997, the members voted to insert the words "breed conformation" before the word "standard" as it appeared in the Foundation's constitution and bylaws.[8] In 1998, the

---

[6] The attorney who defended against the injunction was paid out of an account that was maintained in the GSPCA Foundation's name.

[7] The injunction does not specify that it applies to GSPCA, Inc., as opposed to the GSPCA Foundation. The former corporation, however, had been named as the defendant, and no one told the trial court about the existence (or nonexistence) of the latter corporation.

[8] After that measure passed, plaintiff brought a separate action alleging various irregularities in the 1997 election. That action was dismissed.

members voted to approve lowering the voting requirement necessary to amend the field performance standards from two-thirds to a simple majority of the members. In 1999, the members were asked to approve the use of collaring, the practice that had previously been prohibited by the club's rules. The club's members approved the use of collaring by a simple majority, a vote that was permissible under the 1998 amended constitution and bylaws. In the 1999 election, members were also asked to decide whether to dissolve the Pennsylvania corporation and "officially recogniz[e] the Missouri Corporation as the sole operating [e]ntity for the German Shorthaired Pointer Club of America, Inc."[9] That measure was also approved.

On September 8, 1999, the GSPCA Foundation filed an order to show cause why the 1996 injunction should not be dissolved.[10] In response, plaintiff argued initially that the GSPCA Foundation was not the real party in interest. Alternatively, he argued that, even if the GSPCA Foundation were the real party in interest, the trial court should not dissolve the injunction because irregularities in the 1997 election resulted in the Foundation's members improperly approving the use of collaring in the 1999 election. The trial court did not accept either argument and dissolved the injunction.

On appeal, plaintiff pursues the same issues that he raised below. We begin with the question whether the GSPCA Foundation is subject to the injunction. If it is, it may move to dissolve it. On that point, plaintiff argues that, because the GSPCA Foundation has not taken the necessary steps under Missouri law to make it the lawful successor in interest to GSPCA, Inc., it is not bound by the injunction.[11] In analyzing plaintiff's argument, we begin with the terms of

---

[9] The ballot did not specify whether the phrase "Missouri Corporation" referred to GSPCA, Inc., or the GSPCA Foundation. There had been, however, an earlier article in the club's February 1999 newsletter that discussed the relationship between the two Missouri corporations.

[10] On September 17, 1999, the GSPCA Foundation notified plaintiff that its members had voted to expel him from the club.

[11] The GSPCA Foundation does not argue that the measure on the 1999 ballot was sufficient to make it the lawful successor in interest to GSPCA, Inc., and we decline to decide that issue of Missouri corporate law.

ORCP 79 D. That rule provides that every order granting a preliminary injunction

> "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with any of them who receive actual notice of the order by personal service or otherwise."

ORCP 79 D.[12] That portion of the rule is taken verbatim from Rule 65(d), FRCP. As the Court has explained, the federal rule embodies "the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Regal Knitwear Co. v. NLRB*, 324 US 9, 14, 65 S Ct 478, 89 L Ed 661 (1945); see *Alemite Mfg. Corp. v. Staff*, 42 F2d 832 (2d Cir 1930) (stating the common-law doctrine).

Wright, Miller, and Kane explain the limitations on binding nonparties:

> "Although [Rule 65(d)] itself does not speak of 'privity,' the concept frequently is used by the federal courts as synonymous with the enumeration in Rule 65(d) of nonparties who may be bound. Inasmuch as holding a nonparty in contempt for engaging in enjoined conduct might be considered as a possible denial of due process, the privity concept must be restricted to persons so identified in interest with those named in the decree that it would be reasonable to conclude that their rights and interests have been represented and adjudicated in the original injunction proceeding."

Charles A. Wright, Arthur R. Miller, and Mary K. Kane, *Federal Practice and Procedure* § 2956, 340-41 (2d ed 1995); see *Crane Boom Life Guard Co. v. Saf-T-Boom Corp.*, 362 F2d 317 (8th Cir 1966), *cert den* 386 US 908 (1967) (holding that, on the facts of that case, the individual shareholders, the attorney, and a supplier were bound by a consent decree entered against the corporation); *Meredith v. Fair*, 313 F2d 532 (5th Cir 1962), *cert den* 372 US 916 (1963) (holding that

---

[12] Although ORCP 79 D does not apply to permanent injunctions, such as the one here, we cite it for two reasons. First, as explained below, ORCP 79 D and its federal analogue reflect the common-law doctrine, which does apply. Second, we see no reason for applying a different rule to permanent injunctions.

the Governor of Mississippi was bound by an injunction requiring the University of Mississippi to admit Meredith).

More specifically, Wright, Miller, and Kane explain that, "[w]hen an injunction has issued against a corporation, a subsidiary corporation or an independent corporation acting in active concert also may be bound by the order." Wright, Miller, and Kane, *Federal Practice and Procedure* § 2956 at 352.[13] In this case, the GSPCA Foundation has held itself out as the successor in interest to GSPCA, Inc. It has assumed that corporation's obligations and functions since it was incorporated in 1992, and it acknowledges that it had ample notice and an opportunity to be heard before the trial court issued the injunction in 1996. Even if the 1999 election were not sufficient under Missouri law to make the GSPCA Foundation the lawful successor to GSPCA, Inc., a proposition that we do not address, the GSPCA Foundation is still "so identified in interest with those named in the decree that it would be reasonable to conclude that [its] rights and interests have been represented and adjudicated in the original injunction proceeding." *See* Wright, Miller, and Kane, *Federal Practice and Procedure* § 2956 at 340-41. Because the GSPCA Foundation was bound by the injunction, it properly moved to dissolve it.

On the merits, plaintiff does not dispute that, if the 1999 rule were validly adopted, the trial court correctly dissolved the injunction. He contends instead that the 1999 rule is a product of a 1997 rule change and a 1998 rule change and that the latter rules were not properly adopted. The GSPCA Foundation responds that the trial court correctly ruled that the 1999 rule was validly adopted.[14] Having reviewed the

---

[13] We find the federal authority, which follows the common-law understanding, persuasive in interpreting Oregon law.

[14] The GSPCA Foundation does not argue that, under Missouri law, plaintiff may not challenge the validity of the 1997 and 1998 rules as a defense to the enforcement of the 1999 rule; that is, the Foundation does not argue that a member of a nonprofit Missouri corporation may not challenge the validity of rules that the corporation adopts, nor does it argue that plaintiff should be treated differently because he was no longer a member when this litigation ended. *See* n 10 above. In the absence of any briefing or argument on those issues of Missouri corporate law, we decline to reach them. *See City of Eugene v. Monaco*, 171 Or App 681, 691, 17 P3d 544 (2000), *rev den* 332 Or 240 (2001). Rather, we assume without deciding that Missouri corporate law permits plaintiff to raise these sorts of challenges as a defense to the enforcement of the 1999 rule.

parties' arguments, we conclude that a discussion of those issues would not benefit bench or bar and affirm the trial court's ruling on the merits of plaintiff's claims without discussion.

Affirmed.